**In the Interest of C.M.D., Plaintiff, Juvenile Officer, Respondent,**

v.

**G.B. (Grandmother), Appellant.**

**No. WD 56723.**

Missouri Court of Appeals, Western District.

May 30, 2000.

Laura Higgins Tyler, Kansas City, for plaintiff.

Anastacia Renae Adamson, Michael Reid Fogal, Co-Counsel, Robert Michael Schieber, Co-Counsel, Kansas City, Mary Kathryn O'Malley, Co-Counsel, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge JOSEPH M. ELLIS and Judge EDWIN H. SMITH.

LAURA DENVIR STITH, Presiding Judge.

G.B., the grandmother of C.D., appeals the juvenile court's ruling denying her motion to intervene in the juvenile court case in which the custody of C.D. is being determined. Because we agree with Grandmother that under Section 211.177 she has a right to intervene in the custody proceeding where, as here, the trial judge did not find that intervention was against the best interests of the child, and because we reject the judge's implicit ruling below that Section 211.177 does not provide a basis for intervention if the parental rights of the parents have been terminated, we reverse and remand with directions that the judge below immediately grant Grandmother's motion to intervene and proceed without delay to determine the custody and visitation issues which Grandmother

4. These factors are set forth in our discussion of Point II of M.D.'s appeal.

has been seeking to have addressed for the last one and one-half years.

## I. FACTUAL AND PROCEDURAL HISTORY

This case has an unusual procedural history. Appellant G.B. is the grandmother of C.D., who was born on April 3, 1992 to M.D. (Mother). Mother left C.D. in the care of G.B. (Grandmother) when he was five weeks old. Grandmother cared for C.D., without appreciable assistance from Mother, until C.D. was about five and one-half years old. In February, 1996, when C.D. was not quite four years old, the Department of Family Services (DFS) took jurisdiction over C.D. and his sibling, S.D., on the basis that Mother had left them without care, custody or support in that she had left C.D. almost continuously with his Grandmother without substantial assistance from Mother, and had left S.D. in the care of others.

The juvenile court took jurisdiction over C.D. and initially placed him in Grandmother's care and custody from February 1996 until September 1997. At that point, due to deterioration of her own marriage of 25 years, Grandmother sought help from DFS and custody of C.D. was changed to the home of foster parents, the M. family, who were acquaintances of Grandmother. The order specified that Grandmother and C.D. were to continue having contact, and Grandmother continued to visit with C.D. while he lived with the M. family, although she eventually made her visits more infrequent so as to allow for more bonding between C.D. and the M. family.

On December 16, 1997, the Juvenile Officer of Jackson County, Missouri filed a Petition for Termination of Mother's and Father's parental rights as to C.D. The Juvenile Officer requested that custody be placed with Grandmother during the proceeding's pendency, but later that was changed to the M family. Grandmother was not served with a copy of this pleading nor made a party to the case. Grandmother sought to intervene in the termination of parental rights action on October 9,

1998, but her motion was denied. On that same date, the trial court granted the motion to terminate Mother's and Father's parental rights. Mother appealed that determination, and Grandmother appealed denial of her motion to intervene. This Court assigned that appeal case number WD 56616.

In the meantime, on September 4, 1998, the Juvenile Court Commissioner recommended in the separately pending juvenile court custody case – the case that is the subject of this appeal—that contact between Grandmother and C.D. be terminated. On September 10, 1998, the juvenile judge entered an order to that effect. Grandmother was not served with a copy of the order. On November 3, 1998, Grandmother filed a motion to intervene in this custody proceeding, but that motion was denied by the Commissioner in a one-sentence order stating simply "Now on this 5 th day of November, 1998, the Motion to Intervene filed the 5 th day of November, 1998, is denied." Once that order was adopted by the juvenile court judge, Grandmother appealed it to this Court. We assigned that appeal case number WD 56723. We then consolidated that appeal with Grandmother's appeal of the denial of her motion to intervene and the other issues in the termination of parental rights action, WD 56616.

Judge Ronald R. Holliger entered an order on February 9, 1999, directing Commissioner Payne to hold a hearing on Grandmother's motion to intervene in the juvenile custody proceeding. In accordance with the understanding of the parties that such a hearing would be held, this Court dismissed Grandmother's appeal of the juvenile court custody case order denying her visitation with C.D. so that the matter could proceed to hearing per agreement of the parties without waiting for determination of the separate issues raised in the termination of parental rights case. The appeal by Grandmother and Mother of the order terminating Mother's parental rights remained pending in this Court, and

our decision affirming that termination is handed down concurrently with this opinion, *In the Interest of C.M.D. and S.D.,* 18 S.W.3d 556 (Mo.App. W.D.,2000).

Unfortunately, when a hearing was held in the juvenile custody case on remand, the juvenile court commissioner entered an order taking under advisement the issue of Grandmother's motion to intervene in the juvenile custody case. In so doing, he noted the pendency on appeal of the termination of parental rights case, and so as "to avoid inconsistent orders," held that "the Motions to Intervene by G.B. and M.B. are hereby taken under advisement pending determination of appeal of Termination of Parental Rights proceeding."

In other words, although this Court had unconsolidated the two appeals so that there could be a determination of the intervention issue in the custody case while the parental rights issue was pending in this Court, the juvenile court commissioner believed that it would be somehow inconsistent to allow intervention to Grandmother if termination of Mother's parental rights was upheld in the termination proceeding, and therefore decided that he would delay ruling on intervention pending the outcome of the termination of parental rights. At oral argument on this appeal, the parties indicated that it was also their understanding that the juvenile court commissioner intended by this order that, if the termination were upheld, then he would deny Grandmother the right to intervene in the juvenile custody case, but if the termination were reversed, then he would grant or would consider granting the motion to intervene.

Grandmother filed a Petition for Writ of Mandamus in this Court, asking us to direct the Commissioner to rule on the motion to intervene without delay, inasmuch as the issue of intervention in the juvenile proceeding was separate from and not dependent on the right of Grandmother to intervene in the termination of parental rights case, and inasmuch as termination of parental rights should not be dispositive of her right to intervene on the issue of custody under Section 211.177.1. She argued that section provided her with the right to intervene as of right where, as here, there was no showing that intervention would not be in her grandson's best interests.

We granted our Preliminary Writ of Mandamus on January 19, 2000, and, following briefing, held oral argument on the request for a permanent writ on March 8, 2000. In light of the arguments made in the briefs and at argument, this Court determined to treat the Petition for Writ of Mandamus filed by Relator Grandmother as a motion to reinstate her appeal in WD 56723 of the juvenile court's denial of her motion to intervene pursuant to Section 211.177 in the underlying juvenile custody case. We did so because we determined that dismissal of that appeal had been improvidently granted in that the issues in that case were ripe for resolution and the delay caused by the dismissal and remand for hearing had ultimately led to the events which caused the filing of the Petition for Writ of Mandamus.

For that reason, on March 13, 2000, we reinstated Grandmother's appeal of the denial of her Motion to Intervene in the juvenile custody case, WD 56723 (although we ordered that this appeal no longer be consolidated with appeal of the parental termination case, as that case had already been fully briefed and argued). We directed the filing of supplemental briefs in that appeal addressing whether the Commissioner erred in denying Grandmother's motion to intervene in the juvenile custody case pursuant to Section 211.177.

Having reviewed the briefs of the parties, for the reasons set forth below we now determine that the trial court erred in denying Grandmother's motion to intervene, in that she had a right to intervene under Section 211.177 because custody of her grandchild was at issue and the juvenile judge did not decide that intervention would be against the best interests of her grandson.

## II. THE RIGHT TO INTERVENE UNDER SECTION 211.177 IS NOT DEPENDENT ON WHETHER PARENTAL RIGHTS ARE BEING TERMINATED, BUT ON WHETHER INTERVENTION IS AGAINST THE CHILD'S BEST INTEREST

It is conceded that this case involves the custody of C.D., and that he is Grandmother's grandson. The parties also agree that the right of a grandparent to intervene in a proceeding such as this, involving custody of a grandchild, is determined by Section 211.177, which states:

1. A grandparent shall have a right to intervene in any proceeding initiated pursuant to the provisions of this chapter, in which the custody of a grandchild is in issue, unless the juvenile judge decides after considering a motion to intervene by the grandparent that such intervention is against the best interest of the child.

2. The right of a grandparent to intervene pursuant to the provisions of this section may terminate upon the adoption of the child except where the child is adopted by a stepparent, another grandparent or other blood relative.

Sec. 211.177 RSMo 1994.

As is evident, this section on its face provides that a grandparent has the right to intervene *unless* the juvenile judge decides, after considering the motion to intervene, that intervention is against the grandchild's best interests. Here, the juvenile judge made no such determination. He simply issued a one-line order denying the motion to intervene. He held no hearing on the motion, permitted the presentation of no evidence on it, and nowhere found that intervention would be against the child's best interests. Indeed, even when this case was on remand and the judge finally held a hearing, he did not find that intervention would be against the child's best interests. Rather, he held a ruling on intervention in abeyance pending determination of the termination of parental rights case, believing that intervention should be denied if the parental rights were terminated in the parallel case. He thus made the determination of the right to intervene dependent on the determination of the termination of the parental rights case, rather than on the best interests of the child. In this ruling, the juvenile court commissioner erred.

Indeed, the ruling below denying intervention put Grandmother in a paradoxical, "Catch–22" situation. The circuit court ruled in the termination of parental rights case that Grandmother had no right to intervene in that case because it did not involve the determination of C.D.'s custody, since in Jackson County custody issues are separated out for hearing before the juvenile court, as occurred here. On that basis, we have today affirmed denial of Grandmother's motion to intervene in the termination of parental rights case, for, we found, it involves solely the issue whether Mother and Father's parental rights should be terminated, not whether Grandmother should be permitted to visit her grandson or potentially to regain custody of him. That issue, we found, was being decided in the juvenile custody case – that is, in the case which is the subject of *this* appeal. *See In the Int. of C.M.D.,* 18 S.W.3d 556, *supra.*

Yet, the Juvenile Officer tries to have it both ways, by then arguing on this appeal that there was no point in allowing Grandmother to intervene in this custody case, since, in light of the circuit court's termination of her daughter's parental rights in the termination case, she instantly was no longer a grandmother, and therefore no longer had a right to intervene in the custody case under Section 211.177, as ·it applies only to grandparents. Therefore, the juvenile officer argues, it was proper to deny intervention here, since parental rights had been terminated in the termination case before the court ruled on the motion to intervene.

If we accepted this argument, the juvenile officer would have succeeded in preventing Grandmother's intervention in both cases, by arguing in the termination

case that custody is not at issue in that case and thus intervention in the termination case was properly denied, yet then arguing in this case that the result of the termination case determines Grandmother's right to custody and it is therefore pointless to let her intervene here, in the case which ostensibly deals with custody issues. We reject this approach.

Section 211.177 gives a grandparent the right to intervene in proceedings involving custody, and that right should not be defeated by semantics and wordsmanship contests. If, as the Juvenile Officer now argues, Grandmother's right to intervene and to obtain custody or visitation were determined by the outcome of the parental termination case, then we would have erred in holding today, as we do in our opinion in the termination case handed down this day, that Grandmother had no right to intervene in the termination case, for it would be the resolution of that termination case that would, in reality and in practical effect, be determinative of Grandmother's right to intervene and right to gain custody of or visit with her grandson, C.D.

However, we reject the Juvenile Officer's argument that Section 211.177 makes Grandmother's right to intervene dependent on the outcome of the termination of parental rights case. By its terms, Section 211.177.1 gives a grandparent the right to intervene in a proceeding involving custody of a grandchild *unless* the court finds intervention is against the grandchild's best interests. And, while the court and the Juvenile Officer seem to equate a termination of the mother or father's parental rights with a finding that intervention would not be in the child's best interests, the statute does not support that result. To the contrary, Section 211.177.2 states:

> 2. The right of a grandparent to intervene pursuant to the provisions of this section may terminate upon the adoption of the child except where the child is adopted by a stepparent, another grandparent or other blood relative.

Sec. 211.177.2 RSMo 1994. As is evident, the statute does not state that termination of a parent's parental rights terminates the right of the grandparent to intervene. To the contrary, it states that the right to intervene terminates only "upon adoption of the child except where the child is adopted by a stepparent, another grandparent or blood relative." *Id.* We will not engraft another limitation of the right to intervene where the legislature has chosen not to do so.

And, indeed, the approach taken in Section 211.177.2 makes sense as a policy matter. In many instances in which a parent's rights are being terminated, a relative will seek to obtain custody of that child, and may eventually adopt the child or seek to do so. This is often in the child's best interests. The fact that the potential adopting party, or party who is given custody of the child, is the grandparent of the child is a relevant and important issue in deciding custody or the appropriateness of adoption. Often, as is the case here, the child will have bonded with the grandparent and will have spent much time in the care of the grandparent. For this reason, unless the child is adopted by someone who is not a blood relative, other grandparent, or stepparent, the statute gives the grandparent the right to intervene in any proceeding involving custody. This just makes common sense.

Yet, under the Juvenile Officer's interpretation of the statute, as soon as a parent's rights are terminated, even if the grandparent is planning to adopt the child, the grandparent's rights to intervene in the custody case would be terminated. This result is illogical, and is not in conformity with the statute.

Grandmother here moved to intervene in the custody case. That motion was denied without a hearing and without a finding that it would be against the best interests of C.D. to allow Grandmother to intervene. We find no evidence in this record supporting a finding that such in-

tervention would be against C.D.'s best interests.

Accordingly, we reverse the ruling of the juvenile court and remand with directions to the court to immediately grant the motion to intervene filed by Grandmother and proceed without delay to finally reach the merits of the custody and visitation issues which Grandmother has been attempting to have addressed for the last one and one-half years.

Judge JOSEPH M. ELLIS and Judge EDWIN H. SMITH concur.