

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF E.N.C., | ) ) ) | No. ED101311 |
| Minor. | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of St. Louis County <br><br> Honorable John D. Warner, Jr. <br><br> FILED: December 9, 2014 |

S.M.C.Q. ("Mother") and her husband, M.P.Q. ("Adoptive Father"), appeal from the trial court's judgment allowing a biological paternal grandmother, C.L. ("Grandmother"), to intervene in the case of 10-year-old E.N.C.'s ("Child") adoption and be granted legal visitation with Child on approximately 19 days during the year. Because the law does not allow for third-party intervention in an uncontested step-parent adoption case with no visitation or custody at issue, the judgment erroneously declares and applies the law. We reverse and remand with instructions to dismiss the GAL's cross-petition and Grandmother's motions for visitation.

## I. Background

Child was born out of wedlock to 19-year-old Mother and 20-year-old C.D.W. ("Biological Father") on July 31, 2003. The parties have not provided this Court with a copy of Child's birth certificate; therefore, the record does not reflect whether a father was listed on the birth certificate. Evidence was presented that Biological Father abandoned Mother during her

pregnancy and Mother felt that he also had abandoned and neglected Child since the time Child was born. Mother had full custody of Child and Child spent every other weekend visiting Biological Father and members of his family, including Grandmother.

In August 2012, sealed paternity actions were filed in the City of St. Louis by Biological Father against Mother, addressing paternity and issues involving the establishment of custody between Biological Father and Mother. See Case No. 1222-FC02535. Nothing in this Court's record indicates that paternity testing was conducted to prove or disprove Biological Father is Child's biological father. Meanwhile Mother married Adoptive Father on September 28, 2012. Soon after, Biological Father voluntarily dismissed his case with prejudice in connection with his consent to terminate his parental rights and allow for Child's adoption.[1] Hearing testimony indicates that Biological Father was tired of putting Child through "an inquisition" every time she left him to go back home. Child was told that her Biological Father decided it would be better if Child had just one family.

Mother and Adoptive Father (collectively, "Petitioners") filed a petition for Adoptive Father's adoption of Child pursuant to Chapter 453, "Adoption and Foster Care," RSMo Supp. 2012[2], in St. Louis County on December 27, 2012. The consent to the adoption was signed by Biological Father, filed on January 8, 2013, and approved by the court.

On January 23, 2013, attorneys entered their appearance on behalf of paternal grandmother and "prospective Intervenor," Grandmother, who is Biological Father's mother. It

---

[1] A Settlement Agreement and Release was signed by Mother, Biological Father, and Biological Father's wife, stating that Biological Father would dismiss with prejudice the paternity action alleging that he is the father of Child; he shall execute a Specific Consent to Termination of Parental Rights and Adoption so that Mother's husband, Adoptive Father, may adopt Child; and Biological Father and his wife shall immediately remove all pictures of Child from their social media accounts and use reasonable efforts to have their friends and relatives do the same. They were not to "attempt to have contact or communication with the Child without the prior consent of [Mother] or the Child after she reaches the age of majority." As a condition of the agreement, Mother was to pay $11,500 for Biological Father's attorneys' fees.

[2] Unless otherwise noted, all statutory references are to RSMo Supp. 2012.

2

was approved by the court that day. A guardian ad litem ("GAL") was then appointed by the court. On March 12, 2013, Mother and Adoptive Father filed an Amended Petition for Adoption, alleging that all of the parents required to give consent to the adoption by Chapter 453 had given such consent, and that Petitioners believe the adoption promotes the best interest of the child. On March 29, 2013, Grandmother filed her motion to intervene as a third party, motion for visitation and motion for further investigation regarding third party visitation, pursuant to Section 211.177.[3] Grandmother alleged that since birth, Child had enjoyed a close and bonded relationship with Biological Father and his family, including a permitted and encouraged relationship with Grandmother, and that the settlement agreement consenting to termination of Biological Father's parental rights and the step-child adoption was not in Child's best interest. Because Mother and Adoptive Father have refused to allow Child any contact with Grandmother since the consent agreement, Grandmother asked for reasonable visitation with Child pursuant to Section 452.402.[4] Petitioners filed a memorandum in opposition to Grandmother's motion to intervene, for visitation, and for further investigation. Petitioners' memorandum included arguments that the motion to intervene was untimely since the paternity action already was dismissed, there was no statutory right to intervene, no legally cognizable interest supports intervention "as of right," and ordering grandparent visitation would constitute unreasonable interference with the parents' constitutional rights. Evidence was heard on April 11, 2013; afterward, the court entered its order permitting Grandmother's intervention and ordering mediation.[5]

---

[3] Section 211.177 is the statute titled, "Grandparent's right to intervene in action, restrictions, termination," found within Missouri's revised statutes, Chapter 211, "Juvenile Courts."

[4] Section 452.402 is titled "Grandparent's visitation rights, granted, when, terminated, when—guardian ad litem appointed, when—attorney fees and costs assessed, when." It is found within Chapter 452, "Dissolution of Marriage, Divorce, Alimony and Separate Maintenance."

[5] Also in April 2013 in St. Louis County Circuit Court, another action was filed involving Mother and M.P.S. in which the trial court ruled that M.P.S. is the father of the minor child in that case (the half-sister of Child here at

3

On May 20, 2013, a cross-petition for declaration of paternity, custody and visitation was filed by the GAL, invoking Section 210.826(2).[6]  Three days later, Grandmother filed a Motion to Intervene as a third party and for third-party visitation and grandparent visitation in the GAL's cross-petition for declaration of paternity and custody.  Objections were filed by Petitioners, as was a motion to strike the cross-petition.  However, Petitioners then consented to Grandmother's intervention in the cross-petition on June 4, 2013, "without waiving Motion to Strike Cross Petition."  The cross-petition was not called up for a separate hearing.  Petitioners also filed a motion to dismiss the cross-petition for declaration of paternity for failure to state a claim, arguing that neither cross-petitioner nor the intervenor has standing to seek a declaration of paternity in an uncontested step-parent adoption case wherein the biological father has voluntarily relinquished parental rights and consented to the adoption; therefore, the court lacks jurisdiction.

The final adoption hearing, along with a hearing on Grandmother's motion and the GAL's petition for determination of paternity, took place on September 27, 2013, and November 4, 2013.  Child was 10 years old at the time the case was heard.

During the presentation of evidence, all parties agreed that Mother is a fit parent, and there was no dispute that Adoptive Father is a fit parent as well.  It was clear that Biological Father was detached from Child; however, the parties stipulated that Child had a positive relationship with Grandmother and that together, they had "plenty of good times" and "did a lot of fun stuff."  The trial court made findings from the evidence that Grandmother spent substantial periods of time caring for Child and Grandmother had visitation with Child during the

issue).  See Cause No. 13SL-DR02284.  M.P.S. was ordered by a court to begin paying Mother child support in 2009.  See Cause No. 09SL-DR08543.

[6] Section 210.826 is titled, "Determination of father and child relationship, who may bring action, when action may be brought, notification to be included with petition, contents."  This section is within the Uniform Parentage Act in Chapter 210 on Child Protection and Reformation.

4

times when Child was visiting with Biological Father. Grandmother and Child engaged in a variety of activities together, including Halloween parties, trips to the Magic House, making crafts, buying presents, and frequently, Child spending the night. Grandmother presented compelling evidence of the significant bonding relationship between her and Child, including but not limited to a 2012 Christmas present from Child to Grandmother, which was a necklace with both of their birthstones and on which Child wrote "I ♥ you;" photographs of Grandmother, Child, and family members together spanning over eight years, during which time Child celebrated her First Communion, Grandmother recovered from cancer, they shared time in Grandmother's home, attended movie previews, celebrated Christmas, took a Disney cruise, went to museums and amusement parks as well as Child's sporting events. The trial court noted that "photographs and other exhibits admitted into evidence reflect a happy and warm relationship between Grandmother and Child and demonstrate the Child having fun." Further, Grandmother also welcomed Mother and Mother's other daughter (Child's half-sister) to join them, including welcoming them in holiday celebrations and taking Mother on two Disney vacations with Child. Petitioners stipulated that Grandmother and Mother had a cordial relationship with each other. Grandmother also made efforts to welcome Adoptive Father and encourage a warm relationship with him, too, when he and Mother began dating.

The trial court found from the evidence that the last time Grandmother saw Child was December 2, 2012. Prior to that time, Mother had never suggested to Grandmother that Grandmother stop seeing Child or even reduce the frequency of their visits. The evidence shows that Grandmother requested that Mother permit her to resume seeing Child under whatever terms and conditions Mother would deem appropriate. Grandmother testified at trial that she would not prefer supervised visits, but "[i]f it meant getting to see [Child], [s]he would do that."

5

Mother sent Grandmother an e-mail on January 11, 2013, directing Grandmother to "refrain from any contact with Child," and remove all pictures of her from her Facebook page. Grandmother has been denied time with Child repeatedly since then. Mother testified that a relationship with Grandmother was not in Child's best interest because Child is "ready to move on with her life" and that Child would be upset if she spent time with her former younger half-brother, who was Biological Father's son and whom Child loved. The trial court found Mother's testimony lacked credibility with regard to her concerns over the relationship between Grandmother and Child, and that Child's testimony may have been influenced by Mother and Adoptive Father.

Adoptive Father testified that Grandmother was not someone he wanted any of "his" children around. He based this opinion on an experience where Grandmother bought a car from him, Grandmother's surprise presence at Child's school picnic, and Grandmother's unscheduled attendance at Child's basketball game when he and Mother were out of town.[7] The trial court also found Adoptive Father's testimony lacked credibility and that none of his stated reasons bore upon the best interest of Child or any alleged detriment that Child would suffer if she visited with Grandmother.

Additionally, Child testified that Mother and Adoptive Father told her they were objecting to her seeing Grandmother because it might confuse her little brother (Mother's newest baby, born after Mother married Adoptive Father, half-brother to Child). Child provided details regarding the baby's confusion about where Child might be and who Grandmother was, which confirmed to the trial court Child's in-depth conversations with Mother and Adoptive Father

---

[7] One day when Mother and Adoptive Father were out of town, Grandmother called family members to learn whether Child was going to play in her basketball game, so that Grandmother knew before driving 45 minutes to the game. Mother's mother was at the game and the two grandmothers and the girls went out to eat after the game. Later, Grandmother learned Mother and Adoptive Father thought she had no right to call and find out where Child might be. Mother testified, "I found out from my mother that she [Grandmother] showed up to the basketball game while I was out of town," and she was upset with her own mother because of the incident too. While this Court does not proclaim to be an expert on family relationships, we think surprise visits by people one loves are quite common and within a normal range of expected behavior within a family.

about the issues. Child conceded that her half-sister spends time with her father and is gone at times, but they were still a family. Child testified that she enjoyed the activities she did with Grandmother, had good times with her, and she loved her and missed her. Child testified, "I would just say I like her because, well, I've seen her for years, and how can you not like somebody that you've seen for that many years." In contrast, the trial court found that Child's statement that she would not miss her Grandmother was a reflection of Child's discomfort with being disloyal to Mother and Adoptive Father rather than a detriment to Child in continuing the relationship with Grandmother, which "clearly has historically been an important and positive one for Child."

The trial court found that the overriding factors militating against Child's relationship with Grandmother are Mother and Adoptive Father's desires to make a clean break from Mother's past,[8] which the court did not find to be a reason to deny Child or Grandmother the right to continue their special relationship.[9] The court found no evidence demonstrating Grandmother's detrimental impact on Child. The GAL recommended that visitation between Grandmother and Child would be in Child's best interests and would not be detrimental to her, as it was clearly in the child's best interest to have as many people as possible who love her and care about her and who will see to her best interest in her life. She believed Mother and Adoptive Father wished to limit Child's world to just their new family and believed they told Child she would be sad if she had visitation with Grandmother. The court found the GAL is an experienced professional with more than 30 years of working in the juvenile court and gave her

---

[8] The reason Child was given for the termination of parental rights was that Biological Father thought it would be better if Child had just one family.

[9] Grandmother testified that she understood one of the reasons she was denied contact with Child was because she was Biological Father's mother. She testified that was not a sufficient reason because *she* was not *him*.

opinion great credibility. No evidence was presented that Child would suffer harm if she did not have visitation with Grandmother.

On January 31, 2014, the trial court issued its Order and Judgment, finding Biological Father the natural and biological father of Child and Grandmother the paternal grandmother of Child. Additionally, finding that Child's welfare and best interest requires establishing a schedule of visitation, the court granted Grandmother visitation with Child for one day each month and one week during the summer.

Mother and Adoptive Father filed a petition for writ of prohibition and suggestions in support thereof on March 4, 2014, and this Court issued a preliminary order in prohibition, staying the trial court's order of visitation while parties filed suggestions in opposition as well as full briefs on the issue. Meanwhile the adoption decree was entered on March 10, 2014. Ultimately, this Court quashed the preliminary order and extraordinary writ on May 15, 2014. This appeal follows. Mother and Adoptive Father filed a motion to stay enforcement of the visitation order, which was granted on June 3, 2014.

## II. Discussion

Petitioners raise two points on appeal. First, they allege the trial court erred in granting third-party visitation to Grandmother in that an award of visitation must be authorized by statute and no statute gives Grandmother a right, or the trial court authority, to make an award of visitation in this case. Petitioners support this argument by contending that Section 452.375.5(5) did not supply the necessary statutory authority for an award of visitation because it applies only in custody proceedings, there is no custody issue involved in this case, and Grandmother has no standing to initiate a custody proceeding.[10] Further, Petitioners claim the trial court erroneously

---

[10] Grandmother has also filed a motion to strike portions of Appellants' Reply brief, arguing that this Court should strike Appellants' arguments made relating to the GAL's standing to initiate a cause of action under the authority of

8

declared and misapplied the law in holding that Section 452.375.5(5) allows a grant of third-party visitation in this adoption case in that Grandmother failed to present any evidence of essential elements of a claim, including the existence of a prior custodial relationship with Child and "special or extraordinary circumstances" showing that "the welfare of the child require[d]" the award of visitation.

In their second point, Petitioners allege the trial court unconstitutionally applied Section 452.375.5 in that the trial court ignored Petitioners' assertion of their constitutional rights as parents to direct the associations of their child, and: the trial court improperly failed to give any deference whatsoever to Petitioners' determination of Child's best interest, despite the trial court's finding Petitioners to be fit parents; the trial court improperly presumed that visitation with Grandmother was in Child's best interest without regard to any facts in this case; the trial court improperly placed on Petitioners the burden to prove that visitation would be harmful to Child. Petitioners further argue the trial court's order of visitation far exceeds the constitutionality mandated "minimal intrusion" into Petitioners' family life in that it is more frequent than once every 90 days and is far more than the prior visitation Grandmother had with Child.

## A. Standard of Review

This Court reviews the judgment of the trial court under the standard of review applicable to any other court-tried case. The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). The reviewing court defers to

---

the GAL in adoption cases, enumerated in Section 453.025. The motion has been taken with the case and we agree that Appellants are raising a new issue in their reply brief. "Appellate courts are generally 'precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument." Berry v. State, 908 S.W.2d 682, 684 (Mo. banc 1995) (internal citations omitted). We grant Grandmother's motion to strike those portions of the reply brief, and, moreover, find the argument regarding the GAL's authority inconsequential here because the dismissed paternity action and consent to adoption were final prior to the GAL's filing of any cross-petition.

9

the trial court's determination of credibility and views the evidence and permissible inferences in the light most favorable to the trial court's judgment. Wright ex rel. McBath v. Wright, 129 S.W.3d 882, 884 (Mo. App. W.D. 2004). Specifically in child custody proceedings, we give greater deference to the trial court than in any other proceedings, operating under the presumption that the trial court reviewed all evidence and based its decision on the child's best interests. Id.

The trial court's interpretation of statutes involves a question of law, subject to *de novo* review. Conseco Fin. Corp. v. Mo. Dept. of Rev., 98 S.W.3d 540, 542 (Mo. banc 2003). Constitutionality of the trial court's application of a statute is also a question of law, subject to *de novo* review. State v. Jeffrey, 400 S.W.3d 303, 307 (Mo. banc 2013).

## B. Analysis

This case poses a difficult question to this Court based on our current society and its "modern" family life. Missouri statutes, Chapter 452, regulate dissolution of marriages with children and visitation and custody therein, even allowing for third-party intervention in certain circumstances. Additionally, Missouri statutes provide for grandparent intervention in proceedings initiated pursuant to the provisions of Chapter 211, which "facilitates the care, protection and discipline of children who come within the jurisdiction of the juvenile court" and are removed from the control of their parents, and in which the custody of the grandchild is in issue. Section 211.177; Section 211.011. However, this adoption case, filed under Chapter 453, does not fit within the parameters of either Chapter 452's dissolution of marriage context or that of Chapter 211's custody determination when a child has been removed from her parents and is within the juvenile court system. Chapter 453 for adoption does not speak to termination of parental rights; rather, it authorizes adoption with or without consent. See In re Adoption of

10

<u>C.M.B.R.</u>, 332 S.W.3d 793, 806 (Mo. banc 2011). Neither does the chapter for dissolution of marriage allow for third-party intervention in a Chapter 453 adoption proceeding. Although strategic efforts were made to use the statutes and rules to give Grandmother standing to continue a relationship with Child, and in the best interest of the child, we find, with sympathy, Grandmother had no standing to intervene in Petitioners' adoption action to request visitation with Child after her son, Biological Father, signed away his parental rights and consented to the adoption.

**Point I: Was the Third-party visitation authorized by statute?**

We begin our analysis by looking at the original petition filed in this case. The parties have overlooked the fact that the Petition filed here was a petition for adoption, pursuant to Chapter 453 regulating adoptions. Grandmother and the trial court operated under the erroneous assumption that Chapter 452, which regulates dissolution of marriage, divorce, alimony and separate maintenance, applies here. Mother and Adoptive Father filed their petition for Adoptive Father's step-parent adoption of Child pursuant to Chapter 453, following the voluntary dismissal of Biological Father's paternity case, with prejudice, and consent to terminate his parental rights as well as consent to Child's adoption. Now this Court must determine whether the trial court was correct in granting Grandmother visitation through Section 452.375.

Although the GAL here attempted to file a cross-petition for paternity and interject the issue of custody and visitation into the adoption proceeding, it is significant that Biological Father already had voluntarily dismissed his paternity case with prejudice in connection with his consent to terminate his parental rights. [11] Biological Father signed his consent to the adoption,

---

[11] But for Biological Father's previous dismissal and consent, we also would question the GAL's authority to file a cross-petition here, which filing is an extremely rare occurrence. Section 453.025 states that a GAL is "to *represent* the person sought to be adopted," Section 453.025.1 (emphasis added). Commentary has stated that "[b]asically, a [GAL] will be afforded all the same rights as the other parties' attorneys." 21 Mo Prac., Family Law § 17:13.

filed it on January 8, 2013, and it was approved by the court. Biological Father's voluntary dismissal was effective as of the date it was filed. Thornton v. Deaconess Med. Center-West Campus, 929 S.W.2d 872, 873 (Mo. App. E.D. 1996). According to the Missouri Rules of Civil Procedure, Rule 67.01, a "dismissal with prejudice bars the assertion of the same cause of action or claim against the same party." Hermann v. Heskett, 403 S.W.3d 136 (Mo. App. E.D. 2013). Moreover, a consent to adoption is final when it is executed, unless one proves it was not voluntarily given. Section 453.040.6.

Instructive to our analysis is In re Adoption of R.V.H., where a mother signed a consent for another party's adoption of her child, and the court held that the "mother's rights were fixed, absent a court's later determination of fraud, duress, coercion or other elements which would render the consent involuntary, at the time of her consent." She therefore had no right to intervene in the other party's case for adoption. In re Adoption of R.V.H., 824 S.W.2d 28, 30 (Mo. App. W.D. 1991). Biological Father here did not try to withdraw the dismissal with prejudice of his paternity action, nor did he attempt to withdraw his consent to adoption. Missouri case law indicates that Biological Father's actions were final and his rights were fixed.

In the GAL's cross-petition for declaration of paternity, she, on behalf of Child, was "asserting the same cause of action or claim against the same party as was asserted" in Biological Father's paternity action, which Biological Father had dismissed with prejudice. See Rice v.

---

Further, Missouri Supreme Court Appendix C sets forth the general duties and responsibilities of a GAL appointed under family law-related court matters provided in Chapters 210, 211, 452, 453, and 455. Standard 4.0 states that a GAL shall "diligently advocate a position in the best interests of the child" and, when appropriate, "shall file petitions, motions, parenting plans, responses, or objections." Sup. Ct. Appendix C. However, Section 453.025.4 further delineates specific duties for a GAL, which do not include filing cross-petitions in their representation of the child:

(1) Be the legal advocate for the best interest of the party he is appointed to represent with the power and authority to cross-examine, subpoena witnesses, and offer testimony;
(2) Initiate an appeal of any disposition that he determines to be adverse to the interests of the party he represents; and
(3) Ascertain the child's wishes, feelings and attitudes regarding the adoption by interviewing persons with knowledge of the child, and if appropriate, to meet with the child.

Section 453.025.4.

12

Taylor-Morley-Simon, Inc., 842 S.W.2d 926, 929 (Mo. App. E.D. 1992) (internal citation omitted) (finding a trial court properly dismissed plaintiff's action because the action was barred by the doctrine of *res judicata*). Here, the trial court never ruled on Petitioners' objections and motion to strike the cross-petition or motion to dismiss the cross-petition for declaration of paternity for failure to state a claim, arguing that neither cross-petitioner nor the intervenor has standing to seek a declaration of paternity in an uncontested step-parent adoption case in which the biological father has voluntarily relinquished parental rights and consented to the adoption; Petitioners argued that therefore, the court lacks jurisdiction. Given the circumstances here, we find the trial court erred in failing to dismiss the cross-petition for declaration of paternity, which cross-petition served no purpose other than giving Grandmother a vehicle to enter an uncontested adoption case that raised no custody or visitation issues.

**Grandmother's Standing to be added to the proceedings**

Next we evaluate whether Grandmother had standing to enter into this case at all, prior to a determination that she be awarded visitation. To review the unique procedural facts here, first, on March 29, 2013, Grandmother filed her motion to intervene as a third party, for visitation and for further investigation, pursuant to Section 211.177.[12] Grandmother asked for reasonable visitation with Child pursuant to Section 452.402.[13] Petitioners filed a memorandum in opposition to Grandmother's motion to intervene, for visitation, and for further investigation. Evidence was heard and, afterward, the court entered its order permitting Grandmother's intervention and ordering mediation. Secondly, in May 2013, after the GAL filed a cross-

---

[12] Section 211.177 is the statute for "Grandparent's right to intervene in action, restrictions, termination," within Missouri's revised statutes, Chapter 211 titled "Juvenile Courts."

[13] Section 452.402 is titled "Grandparent's visitation rights, granted, when, terminated, when—guardian ad litem appointed, when—attorney fees and costs assessed, when." It falls within Chapter 452, "Dissolution of Marriage, Divorce, Alimony and Separate Maintenance."

13

petition for declaration of paternity, custody and visitation, invoking Section 210.826(2)[14], Grandmother filed a Motion to Intervene as a third party and for third-party visitation and grandparent visitation in the GAL's cross-petition for declaration of paternity and custody. Objections were filed by Petitioners, as was a motion to strike the cross-petition. However, Petitioners then consented to Grandmother's intervention in the cross-petition on June 4, 2013, "without waiving Motion to Strike Cross Petition." The cross-petition was not called up for a separate hearing. Petitioners also filed a motion to dismiss the cross-petition for declaration of paternity for failure to state a claim, arguing that neither cross-petitioner nor the intervenor has standing to seek a declaration of paternity in an uncontested step-parent adoption case wherein the biological father has voluntarily relinquished parental rights and consented to the adoption; therefore the court lacks jurisdiction.

The Missouri Supreme Court's decision in J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249 (Mo. banc 2009), left some question as to whether a plaintiff's lack of standing implicates the trial court's subject-matter jurisdiction. See Borges v. Mo. Pub. Entity Risk Mgmt. Fund, 358 S.W.3d 177, 183 (Mo. App. W.D. 2012) ("It remains an open question whether a lack of standing implicates the court's jurisdiction or merely the court's authority. . . ."). However, more recently, in CACH, LLC v. Askew, 358 S.W.3d 58 (Mo. banc 2012), the Supreme Court clarified that "[c]ourts have a duty to determine if a party has standing prior to addressing the substantive issues of the case," and that, "[f]or this reason, standing cannot be waived." Id. at 61. The Court cited Farmer v. Kinder, 89 S.W.3d 447, 451 (Mo. banc 2002), to support these statements. Farmer states that "[s]tanding is a jurisdictional matter antecedent to the right to relief." Id. Other post-Webb Court of Appeals decisions have characterized standing

---

[14] Section 210.826 is titled, "Determination of father and child relationship, who may bring action, when action may be brought, notification to be included with petition, contents." This section is within the Uniform Parentage Act in Chapter 210 on Child Protection and Reformation.

as an aspect of the circuit court's subject-matter jurisdiction. See, e.g., Higginbotham v. Higginbotham, 362 S.W.3d 34, 36-37 (Mo. App. S.D. 2012) ("When a party lacks standing sufficient to maintain the action and, consequently, has no right to relief, the court necessarily does not have jurisdiction of the question presented and may not enter a judgment on the matter." (citation omitted)); State ex rel. St. Louis Retail Grp. v. Kraiberg, 343 S.W.3d 712, 715 (Mo. App. E.D. 2011) ("If a party lacks standing, the court must dismiss the case because it lacks jurisdiction to consider the substantive matters." (citation omitted)); White v. White, 293 S.W.3d 1, 8 (Mo. App. W.D. 2009) (same).

Thus, we first must determine the question of standing, which was raised by Petitioners in their motion to strike the cross-petition and motion to dismiss the cross-petition for declaration of paternity for failure to state a claim. Standing to sue evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit. City of Wellston v. SBC Communications, Inc., 203 S.W.3d 189, 193 (Mo. banc 2006). Standing is "a concept used to ascertain if a party is sufficiently affected by the conduct complained of in the suit, so as to insure that a justiciable controversy is before the court." Coyne v. Edwards, 395 S.W.3d 509, 516 (Mo. banc 2013).

> "Interest," generally, means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action.

Matter of J.F.K., 853 S.W.2d 932, 935 (Mo. banc 1993) (quoting In the Matter of Trapp, 593 S.W.2d 193, 204 (Mo. banc 1980)). Objections to standing, unlike objections based on the real party in interest rule, cannot be waived. City of Wellston, 203 S.W.3d at 193. "In order to be a party, a person must either be named as a party in the original pleadings, or be later added as a party by appropriate trial court orders." In re R.R.R., 236 S.W.3d 103, 105 (Mo. App. S.D.

15

2007) (quoting State ex rel. Morris v. McDonald, 817 S.W.2d 923-26-27 (Mo. App. S.D. 1991)). Appellate review of a trial court's determination regarding a litigant's standing is *de novo,* with no deference given to the lower court's decision. Blue Cross & Blue Shield of Mo. v. Nixon, 81 S.W.3d 546, 551 (Mo. App. W.D. 2002). "We determine standing as a matter of law on the basis of the petition and the undisputed facts." Id.; White v. White, 293 S.W.3d 1, 8 (Mo. App. W.D. 2009).

Under Missouri law, the grandparents of a child, whose parent has consented to have the child adopted, are not necessary parties to an adoption proceeding and are not entitled to notice of the adoption proceedings. State ex rel. T.W.N. v. Kehm, 787 S.W.2d 728, 731 (Mo. App. E.D. 1989). Further, Missouri law does not extend visitation rights to the natural grandparents of adopted children. Kambitch v. Ederle, 642 S.W.2d 690, 694 (Mo. App. E.D. 1982); Aegerter v. Thompson, 610 S.W.2d 308 (Mo. App. 1980). In Aegerter v. Thompson, 610 S.W.2d at 310, the court stated that, except for Sections 452.400 and 452.402, grandparents did not have standing to litigate visitation. Further, Missouri courts have held that grandparents or other third parties have no standing to litigate either custody or visitation where they claim such standing without an existing order or decree for custody; however, when a trial court places children with a third party, when the parents are unfit or unable to undertake that custody, the third party has then acquired personal rights and, by that decree, has standing to litigate its modification. Warman v. Warman, 496 S.W.2d 286, 289 (Mo. App. 1973); McCoy v. Rivera, 926 S.W.2d 78, 80 (Mo. App. W.D. 1996) (trial court had no subject matter jurisdiction to determine custody in case where no court previously had entered a custody order). Other jurisdictions have reached similar conclusions: In re Anonymous, 47 Misc.2d 139, 261 (N.Y.S.2d 806 (Surr.Cr. 1965) (maternal grandmother not necessary party to adoption proceedings); In re Watson's Adoption, 45 Haw. 69,

16

361 P.2d 1054 (1961) (paternal grandfather had no legal interest or custodial rights to child and is not entitled to notice; see annot., 48 A.L.R.4th 860, 900 (1986) (grandparents not required parties in adoption proceedings).

Because Grandmother was not named as a party in the adoption proceeding here, we must evaluate whether the trial court appropriately allowed her to intervene. We begin such analysis by first looking to Missouri Supreme Court Rule 52.12, which governs motions to intervene, providing for intervention as a matter of right and permissive intervention.

### *Intervention as of Right*

Rule 52.12(a) provides two circumstances under which a court must grant intervention: (1) when a statute confers an unconditional right on the moving party to intervene in a particular class of case, or (2) when the moving party has an interest in the subject of the action and is so situated that the outcome of the litigation may have a practical affect which impairs or impedes his ability to protect his interest. When a party claims intervention as a matter of right, he is asserting that he may be legally bound or prejudiced by any judgment entered in the case. Coon ex rel. Coon v. American Compressed Steel, 133 S.W.3d 75, 79 (Mo. App. W.D. 2004).

Under intervention as a matter of right, a potential intervenor must meet three requirements in order to intervene: (1) the applicant must have an interest in the subject matter; (2) a disposition of the action may impede the ability of the applicant to protect that interest; and (3) the applicant's interests are not adequately represented by the existing parties. Estate of Langhorn v. Laws, 905 S.W.2d 908, 910 (Mo. App. W.D. 1995).

Missouri courts have held that a grandparent's biological relationship to a child, by itself, does not constitute the necessary "interest" under Rule 52.12(a)(2) to require intervention in an adoption. In re Adoption of H.M.C., 11 S.W.3d 81, 90 (Mo. App. W.D. 2000) ("Paternal

17

Grandparents have no legal right, under current Missouri caselaw, which will be directly enlarged or diminished by the adoption of their biological grandchild").

We find Grandmother did not have the standing to intervene here as a matter of right.

*Permissive Intervention*

Permissive intervention, on the other hand, gives the court discretion as to whether to permit intervention *if* one of the following three basic grounds exist: (1) when a statute confers a conditional right on a particular party to intervene, (2) when the intervenor has a claim or defense that has common questions of law or fact to the issues in the principal action in which she seeks to intervene, or (3) when the validity of a statue, regulation, ordinance or constitutional provision is challenged affecting the public interests, the governmental entity may be permitted to intervene. Rule 52.12(b). Permissive intervention is discretionary and may only be reviewed on appeal for abuse of discretion. In re Adoption of H.M.C., 11 S.W.3d at 90. Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the trial court abused its discretion. Id. at 90-91.

The case at hand does not challenge the validity of a law; the third ground for permissive intervention is not in question. Moreover, Grandmother's claim for visitation does not raise a question of law or fact in common with Petitioner's uncontested adoption petition, which raises

no issue of custody or visitation for the court's determination.[15] Thus, we analyze whether a statute confers a conditional right on Grandmother to intervene. Rule 52.12(b).

The trial court here first permitted Grandmother to intervene,[16] then Petitioners consented to her second intervention in the GAL's cross-petition "without waiving Motion to Strike Cross Petition" and still arguing a motion to dismiss for her lack of standing. Ultimately the trial court allowed Grandmother's intervention in its January 31, 2014 Order granting Grandmother visitation, concluding that Section 452.375.5(5)(b) afforded Grandmother "the right to intervene in a custody proceeding as a party in interest at any time as provided by supreme court rule." The trial court noted that, pursuant to the statute, "the court must find both that the welfare of the child requires such visitation and that it is also in the best interest of the child." Further, the trial court recognized that establishing the standard, the "welfare of the child requires visitation," requires that a grandparent prove "special or extraordinary circumstances," Jones v. Jones, 10 S.W.3d 528, 537 (Mo. App. W.D. 1999), and that the Jones court held that a significant bonding, familial relationship between a child and grandmother constitutes special or extraordinary circumstances such that the welfare of the child and best interest of the child would be served by awarding third-party custody under Section 452.375.5. 10 S.W.3d at 539. Accordingly, based on the evidence, the trial court found the welfare of Child and best interest of Child here would be served by allowing Grandmother visitation.

### Chapter 211

The Missouri Court of Appeals has held that a grandmother may intervene under Section 211.177 where custody of the grandchild is at issue, In re C.M.D., 18 S.W.3d 565, 567 (Mo.

---

[15] Even the GAL's cross-petition for paternity only alleged issues of custody and visitation in relation to the request for grandparent's visitation rights, although Grandmother was not a party to the action. As we noted, supra, the cross-petition should have been dismissed.

[16] The parties have abandoned any arguments that Grandmother was appropriately allowed to intervene as a third party pursuant to Section 211.177 so we need not address that issue here.

App. W.D. 2000), and that the test is whether it would be against the best interests of the child to allow the grandparents to intervene. Section 211.177.1; In re L.J.H., 67 S.W.3d 751, 755 (Mo. App. S.D. 2002) (finding juvenile court did not err in overruling grandparent's motion to intervene where no evidence was presented to rebut the juvenile officer's evidence demonstrating that intervention in the termination of parental rights case would be against the child's best interests). This case, however, was not filed pursuant to Chapter 211; it was filed as a private adoption action under Chapter 453, without raising Child's custody as an issue.

In a more recent private action for termination of parental rights, the Missouri Supreme Court distinguished such private action from those actions initiated under Chapter 211, which "is utilized primarily by state actors, that is, the division of children's services or the juvenile officer, to take children into protective custody and terminate parental rights." In re Adoption of C.M.B.R., 332 S.W.3d 793, 806 (Mo. banc 2011). The Court noted that Chapter 453 does not speak to termination of parental rights; rather, it authorizes adoption without consent or with consent that has the effect of terminating parental rights. Id.

The In re Adoption of H.M.C., 11 S.W.3d at 91, court found that a trial court did not abuse its discretion in denying paternal grandparents' motion to intervene in an adoptive parents' petition to adopt a child and terminate the parental rights of the child's natural parents. Id. The appellate court stated, "Paternal Grandparents' interest was not sufficient to warrant permissive intervention in this case," reasoning that the grandparents played no role in the child's life, nor had they attempted to locate or contact the child from the time the child was an infant until after the adoption petition was filed. Id. To qualify for adoption, the grandparents would have had to have custody of the child for at least six months, the court stated, citing Section 453.080, RSMo. 1994.

20

*Chapter 452*

Here, within the context of a Chapter 453 adoption case, the trial court allowed

Grandmother to intervene pursuant to a different chapter, 452, specifically Section 452.375. To

determine whether the trial court appropriately allowed the intervention, we first look at the

statute itself. It reads, in relevant part:

> 5. Prior to awarding the appropriate custody arrangement in the best interest of
> the child, the court shall consider each of the following as follows:
> (1) Joint physical and joint legal custody to both parents . . .
> (4) Sole custody to either parent; or
> (5) Third party custody or visitation:
> (a) When the court finds that each parent is unfit, unsuitable, or unable to be a
> custodian, or the welfare of the child requires, and it is in the best interests of the
> child, then custody, temporary custody or visitation may be awarded to any other
> person or persons deemed by the court to be suitable and able to provide an
> adequate and stable environment for the child. Before the court awards custody,
> temporary custody or visitation to a third person under this subdivision, the court
> shall make that person a party to the action;
> (b) Under the provisions of this subsection, any person may petition the court to
> intervene as a party in interest at any time as provided by supreme court rule.

Section 452.375.5.

In Hastings v. Van Black, 831 S.W.2d 214 (Mo. App. W.D. 1992), the court discussed

intervention pursuant to Section 452.375. The court did not allow a child's stepfather to

intervene under the statute as a "party in interest" in the biological parents' dissolution action

after a final judgment had been entered in that action because there was no pending action or suit

in which the court was called upon to exercise its jurisdiction over the child. Id. at 215. Here, an

adoption case was pending and the trial court was called upon to exercise its jurisdiction over

Child, but other cases suggest more is necessary; a party must have standing in the case to

intervene.

Also relevant to our discussion here is a case regarding a woman's standing to bring an

action to determine a mother-child relationship after a same-sex relationship ended, involving

21

children, White v. White, 293 S.W.3d 1, 17-22 (Mo. App. W.D. 2009). In White, the Western District discusses the "exceptional circumstances" that give rise to third-party custody or visitation. Id. There the court discussed Section 452.375.5's presumption that parents are fit, suitable and able custodians of their children, rebuttable by showing that the welfare of the children, due to extraordinary circumstances, renders it in their best interest that custody be granted to a third party. Id. at 17-18. However, importantly, the court noted that Section 452.375.5's interpretation was "[i]n the dissolution context," rather than any other action, and that "[n]either our statutes nor our case law remotely suggest that any third party that comes along has standing to bring an action seeking custody of children." Id. at 18. Rather, the case law and statutory provisions are consistent with regard to grandparents and third parties in dissolution proceedings, permitting grandparents to intervene as a party in interest, pursuant to supreme court rule, "in any dissolution action solely on the issue of visitation rights," or they may file a motion to modify. Id. The Western District found that the limited circumstances under which a third party has foundational standing to litigate custody and visitation under the exceptional circumstances doctrine of Section 452.375.5 did not include the woman's petition. Id. at 21. Thus, Section 452.375.5 provides that a third party may intervene in a case in which custody is at issue, only in a dissolution of marriage action or a modification of a dissolution proceeding. Id. at 18.

To compare, Missouri courts have also noted that Section 452.402 addresses grandparents' rights of visitation in dissolution cases, not adoption proceedings. State ex rel. T.W.N. v. Kehm, 787 S.W.2d 728, 732 n.1 (Mo. App. E.D. 1989). We note, however, that the Western District once found that a grandparent petitioner could seek visitation of a child under Section 452.402, RSMo Supp. 1989, outside of a dissolution case, when it allowed visitation

22

between a grandmother and child born out of wedlock even where the putative father was not married to the mother, had not acknowledged paternity, had not paid support, and had not otherwise established a relationship with the child. Matter of C--- E--- R---, 796 S.W.2d 423, 424 (Mo. App. S.D. 1990). The court stated, "Were we to add any of these conditions, we would be engrafting an exception upon the statute which it does not contain. Petitioner is undisputedly the mother of the father of the child and thus a grandparent. She was denied visitation with the child." Id. Matter of C--- E--- R---, however, included undisputed evidence at trial that the petitioner's son was the father of the child, and father had not terminated his parental rights like Biological Father voluntarily did here in a separate proceeding. Nor was C--- E--- R--- an adoption proceeding as this case. Additionally, since C--- E--- R--- was decided, Section 452.402 has been amended to provide for grandparent visitation when one of three circumstances is met first, plus an additional requirement that the grandparent be denied visitation unreasonably for a period exceeding ninety days. Section 452.402.1(1)-(4). The three circumstances are: (1) there is a dissolution action involving the parents of the child; (2) one parent of the child is deceased and the surviving parent denies reasonable visitation to a parent of the deceased parent of the child; or (3) the child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition. Section 452.402.1(1)-(4). The legislature has also amended the statute to state currently that the "right of a grandparent to maintain visitation rights pursuant to this section may terminate upon the adoption of the child," and deleted the exception that previously still allowed grandparent visitation in cases "where the child is adopted by a stepparent, another grandparent or other blood relative." Section 452.402.6.

Even after C--- E--- R--- was decided, however, the Missouri Supreme Court noted:

23

Section 452.375 includes definitions for various types of child custody arrangements following the dissolution of a marriage, for example, "joint legal custody" or "joint physical custody." That statute is irrelevant here as this is not a dissolution proceeding. The only class into which Grandparents could possibly fit would be "third party custody," section 452.375.1(4). Beyond the "third party" denomination, section 452.375 does not apply in this grandparent visitation case. Neither section 452.375 nor section 452.402 cross-references the other. In short, section 452.375 does not affect section 452.402 or Grandparents' visitation. If the legislature had intended such a connection, it could have drafted section 452.402 or section 452.375 to reference each other. As it did not, we decline the overly broad interpretation of section 452.375 that Parents advocate.

In re G.P.C., 28 S.W.3d 357, 367 (Mo. App. E.D. 2000) (overruled on other grounds).

Later, in Tompkins v. Ford, 135 S.W.3d 508, (Mo. App. W.D. 2004), the Court of Appeals found the trial court erred in permitting a grandmother's request for visitation, pursuant to Section 452.402 and by a separate petition, where the grandmother was required to seek relief through a motion to modify a dissolution judgment under the circumstances that the child's parents had been married and then divorced. The court specifically noted that it did "not reach the issue of how a grandparent may seek visitation with a grandchild in circumstances where the child's parents were never married." Id. at 511 n.3.

Accordingly, if all grandparents were allowed to legally petition the court for visitation with a grandchild pursuant to third-party visitation in Section 452.375, then Section 452.402 and its three circumstances allowing for grandparent visitation would not be necessary. Grandparents of children born to an unmarried parent who terminated his parental rights could have been included in these circumstances allowing for visitation rights had the legislature so intended it. Such grandparents wanting visitation could have been anticipated and, as the legislature did not provide for visitation under this circumstance, it is reasonable to assume they have the same rights as the parents of a married father or mother and must meet the criteria that there is either (1) a dissolution action, (2) a deceased parent, or (3) child resided in grandparent's

24

home, plus the additional requirement that the grandparent be denied visitation unreasonably for a period exceeding ninety days. Section 452.402.1(1)-(4). None of these circumstances apply here. This was never a case of dissolution, which is required for grandparent visitation under Section 452.402.1(1), as well as a requirement for third-party visitation under Section 452.375.

The issue here has been well addressed in a Southern District case involving the intervention of paternal grandparents into the maternal grandparents' case petitioning for transfer of custody and adoption of their two grandchildren. In re Adoption of R.S. and D.S., 231 S.W.3d 826 (Mo. App. S.D. 2007). The parties never challenged the intervention pursuant to Section 452.375.5, and the court repeatedly stated that it "need not decide whether Section 452.375.5 gives a party a statutory right to intervene in adoption proceedings brought under Chapter 453, but that the court can allow grandparents permissive intervention. Id. at 830. The court did find, however, that Section 452.375.5 "does not give a grandparent a statutory right to visitation in an adoption proceeding commenced under Chapter 453." Id. at 831. The court explained:

> It is unlikely this statute [452.375] was ever intended to be used to grant a party a right to visitation in an "adoption" case. First, the statute is speaking of providing a "custody arrangement" for a child. While an adoption certainly entails the adoptive parents receiving both legal and physical custody of the child, it is different than just granting custody to a parent or a third party. "When a child is adopted . . . all legal relationships and all rights and duties between such child and his natural parents . . . shall cease and . . . [s]uch child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption[.]" Section 453.090. Accordingly, in an adoption proceeding, unlike in a proceeding awarding custody to a parent or a third party, the legal rights of a natural parent are completely abrogated. Id. This "statutory abrogation extends to grandparents – parents of the natural parents whose rights were taken away" as well. In re Marriage of A.S.A., 931 S.W.2d 218, 225 (Mo. App. S.D. 1996). Therefore, Section 452.375.5 does not give a grandparent a statutory right to visitation in an adoption proceeding commenced under Chapter 453.

Id. at 830-31.

25

As Petitioners here have questioned Grandmother's standing in the case from the time she first intervened, we now look at Section 452.375's applicability to parties seeking intervention and visitation in an adoption case. Because this was not a dissolution case and Grandmother did not have standing by virtue of previous custody or court-ordered visitation, we conclude that Grandmother had no interest that could support intervention.

*Chapter 453*

Petitioners here filed an uncontested petition for adoption by a step-parent, without raising any issues of custody or visitation. Adoption is purely a creature of statute, unknown to common law. In re Baby Girl P., 159 S.W.3d 862, 864 (Mo. App. W.D. 2005). Our adoption statutes, Chapter 453, constitute a complete code, and the various sections thereof should be construed together. In re Adoption of Smith, 314 S.W.2d 464, 466 (Mo. App. 1958). It has been stated that the purpose of Missouri's adoption law "is to provide homes and proper nurture, education, and training for children who have lost their parents, or for children whose parents, because of misfortune or improvidence, are unable to properly rear and educate them." In re Perkins, 117 S.W.2d 686, 693 (Mo. App. 1938). Further, "[i]t was never intended to supplant the jurisdiction of courts to adjudicate the custody of children as between parents who are living apart . . ." Id. Neither do we hold today that an uncontested adoption was intended as a means to adjudicate issues of custody or visitation for parties outside of the adoption proceeding.

Even though Section 452.375 is a statute that confers a conditional right on a third party to intervene, we find that the statute provides only for intervention in dissolution proceedings. Grandmother has no prior custody or visitation order subject to modification during the adoption proceeding. Grandmother's claim to visitation has no common questions of law or fact to the issues in the principal step-parent adoption action in which she seeks to intervene. Thus, we find

26

that the trial court abused its discretion in permitting Grandmother to use Section 452.375 to intervene in Petitioners' uncontested adoption case.

The earliest reported case addressing the issue of grandparent visitation, <u>Succession of Reiss</u>, 15 So. 151 (La. 1894), held that grandparent visitation was a moral, not legal obligation. <u>See</u> <u>Blakely and Missouri's Grandparent Visitation Statute: An Abridgment of Parents' Constitutional Rights?</u>, 68 Mo. L. Rev. 691, 704 (2003). While we hold today that Grandmother cannot legally obtain visitation rights under these circumstances, we agree with the GAL, the trial court, and the first reported case discussing the issue that allowing Child continued contact with Grandmother, whom she has grown to love throughout perhaps a less stable time in her mother's life, can only benefit this Child's positive development and should be seen as a moral obligation. We do not doubt that this was the trial court's priority when it granted Grandmother visitation. Even though Grandmother is not entitled to court-ordered visitation, this in no way must limit her ability to see Child, provided that Petitioners would agree to such request.

> A grandparent's relationship with grandchildren can be a fulfilling and important bond. A loss of contact resulting from divorce, separation, intentional alienation, or any number of situations can have a detrimental affect on both grandparents and grandchildren. An elderly grandparent's emotional health may be adversely impacted immediately after the loss, as well as years later. Grandparents play an important role in the lives of their grandchildren as well. Close relationships with grandparents are especially important to children experiencing divorce or family turmoil. Studies have found that continued contact with grandparents reduces depressive symptoms in young adults of single-parent families.

McCormick, Mary and Christine A. Gilsinan, Grandparents' rights, 41 Mo. Prac. Series § 5:8 (2014) (internal citations omitted).

> A child and his grandparents have the same relationship regardless of whether his parents are married. The grandparents may, and perhaps should have, the same regard for the grandchild born out of wedlock, as one born of married parents. The out-of-wedlock child may even need the love and assistance of the grandparents more than a child whose parents are married and live together.

<u>Matter of C--- E--- R---</u>, 796 S.W.2d 423, 425 (Mo. App. S.D. 1990). Here Child spent a number of years in an out-of-wedlock situation and it is obvious from the record that she benefited greatly from the love and assistance of her grandparents. It is unfortunate that her adoptive parents do not see that the loss of contact with Grandmother may have a detrimental effect on both Grandmother and Child. Child is old enough to remember her relationship with Grandmother, her desire to spend time with Grandmother, and her love for Grandmother. Although the legal ties are broken, forcing a broken relationship with Grandmother may result in repercussions someday, even if it is when Child reads this opinion, questions her parents' true motives, and makes her own decisions to rekindle what was once an important relationship with Grandmother.[17]

This Court hopes, for the sake of all parties involved, that Child and Grandmother will be reunited one day when Mother has moved past her disdain for Biological Father's abandonment of her and Child, Adoptive Father realizes that raising an adoptive child is not a competition between old and new families, and they both remember the love Grandmother has shown to their daughter and family.

We find that the trial court abused its discretion in allowing Grandmother to intervene in the parties' adoption case by way of Section 452.375. Grandmother's intervention for purposes of obtaining court-ordered visitation had no issue of fact or law in common with Petitioner's uncontested adoption petition. Thus, Grandmother did not have standing. Petitioners' first point is granted and we decline to consider Petitioners' second point relating to the unconstitutional application of Section 452.375.

---

[17] During the hearing, the trial court explained to Child, "One of the things as a judge that you have to do all the time is make decisions that affect other people's lives, and sometimes it gets tough. You know, it's kind of like a mom or a dad or a grandma and grandpa. We sometimes have to make decisions, and sometimes you don't make everybody happy. When you get bigger, you will have to be making those decisions. . . ." (Tr. 132)

28

### III. Conclusion

We reverse and remand with directions that the trial court dismiss the GAL's cross-petition and Grandmother's motions to intervene in this case.

_____

ROY L. RICHTER, Judge

Patricia L. Cohen, P.J., concurs.
Robert M. Clayton III, J., concurs.