**In the Matter of the ADOPTION OF I.R.C. and A.R.C., Children under seventeen years of age.**

No. SD 32349.

Missouri Court of Appeals, Southern District.

April 19, 2013.

Rehearing and/or Transfer to Supreme Court Denied Apr. 29, 2013.

Application for Transfer Denied May 28, 2013.

James R. Sharp, Sharp & Bredesen, Springfield, MO, for Appellants.

Chris Koster, Attorney General, and Gary L. Gardner, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, P.J.

Ronald and Maureen Spangler appeal the trial court's denial of their petition for transfer of custody and later adoption of their grandniece and grandnephew. The Spanglers contend, first, that the trial court erred in not consolidating their case, *sua sponte*, with another pending petition to adopt the children and, second, that there was no evidence in the record supporting the trial court's determination that granting the Spanglers' petition was not in the children's best interests. Finding no merit in either claim, we affirm.

### Factual and Procedural Background

I.R.C. and A.R.C. were born to A.M. ("Natural Mother") and I.C. ("Natural Father"), on August 5, 2008, and September 10, 2010, respectively. I.R.C. was taken into protective custody in September 2009, due to Natural Mother's substance abuse, and A.R.C. was taken into protective custody within a week of his birth. Natural Father's parental rights to both children were terminated, and Natural Mother passed away in January 2011. Both children were placed in the same foster home.

At Natural Mother's funeral, the Spanglers learned from the children's maternal grandmother, who lives in Springfield, that the children had been placed in foster care. Before that, the Spanglers had seen I.R.C. only one time, when Natural Mother and her mother came to visit them in Broken Arrow, Oklahoma. It was also at the funeral that the Spanglers first learned of the birth of ARC. Before the funeral, the Spanglers did not know where the children, Natural Mother, or the maternal grandmother had been living.

Despite the knowledge they gained at the funeral, the Spanglers did not take any action regarding the children until eight months later in August 2011, when they first sought to visit the children. This was the result of the maternal grandfather—Maureen Spangler's brother—contacting the Spanglers and asking if they would adopt the children. The Spanglers visited the children in conjunction with the maternal grandfather's supervised visits. In addition to the visit in August 2011, the Spanglers visited with the children in December 2011, January 2012, and February 2012, for a total of about eight hours. Shortly thereafter, the Children's Division informed the Spanglers that they could no longer visit the children because they had not been approved as an adoption placement for the children. The Spanglers then filed a motion for visitation.

A home study of the Spanglers' home in Oklahoma was completed in January 2012, and the Spanglers' home was found to be suitable for placement of the children. The Spanglers filed a petition to adopt the

children on March 12, 2012, and filed an amended petition to adopt the children just before the hearing on May 21, 2012, which included a count seeking transfer of custody of the children to them. Although the Spanglers knew that the children's foster parents had also filed a petition to adopt the children, the Spanglers did not file a motion to intervene in that case nor did they file a motion to consolidate the two cases.

At the hearing on their amended petition, both Ronald and Maureen Spangler testified as to their home, parenting styles, and parenting preparations. They also testified that they thought it was in the children's best interests to be placed with them—and, ultimately, adopted by them— "because we are family and it's a big family ... they need that support of their family." They stated that they did not get involved with the case sooner because they were trying to respect both the biological father's and grandparents' rights. Following the presentation of testimony, the children's guardian ad litem recommended that, although the Spanglers appeared to be suitable for placement, such a placement was not in the children's best interests because of their bond with their foster parents. He then recommended that the trial court grant the foster parents' competing petition for adoption. The Children's Division did not present any evidence, although it did concur in the guardian ad litem's recommendation.

In its judgment issued June 8, 2012, the trial court found that the Spanglers "seem to be of impeccable character, have an excellent work record and would certainly seem to be capable of being appropriate parents." Nevertheless, the trial court denied the Spanglers' petition for transfer of custody and adoption based upon the recommendations of the guardian ad litem and Children's Division, as well as section 453.070, RSMo. Cum.Supp.2011, which es-sentially gives preference for adoption to foster parents who have cared for a child for at least twelve continuous months. In making its ruling, the trial court noted the length of time the children had been with their foster parents and evidence of a "strong bond" between the children and the foster parents. This appeal followed.

### Standard of Review

We review adoption cases using the well-known standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *In re C.G.L.*, 63 S.W.3d 693, 696 (Mo.App. 2002). As such, we will uphold the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32. "The application of this standard of review varies depending on the burden of proof applicable at trial and the error claimed on appeal to challenge the judgment." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). In any event, we defer to the trial court's determinations of witness credibility and factual issues; in fact, "[g]reater deference is granted to a trial court's determination in custody and adoption proceedings than in other cases." *In re K.K.J.*, 984 S.W.2d 548, 552 (Mo.App.1999). Finally, all facts and the reasonable inferences that can be drawn therefrom are examined in the light most favorable to the trial court's judgment. *In re C.J.G.*, 75 S.W.3d 794, 797 (Mo.App.2002).

### Discussion

The Spanglers present two points for our review. We review them in the order presented.

### No Error in Failure to Sua Sponte Consolidate

In their first point relied on, the Spanglers claim that the trial court's failure to

*sua sponte* consolidate their adoption petition with that of the children's foster parents constituted a misapplication of the law because such failure deprived the trial court of all relevant information necessary to its decision as to the best interests of the children in each case. We disagree.

■ Rule 66.01 [1] allows for the consolidation of competing petitions for adoption; however, such an action is left to the trial court's discretion. Accordingly, there is no right to consolidation. Rule 66.01(b); *see also In re Adoption of H.M.C.*, 11 S.W.3d 81, 91 (Mo.App.2000).[2] The Spanglers cite us to no authority granting them such a right, much less mandating the trial court to consolidate all competing adoption petitions in all circumstances. The Spanglers did not file a motion to consolidate the two competing cases, and we will not fault the trial court for not undertaking such action in the absence of such a request. *See In re T.L.F.*, 184 S.W.3d 642, 644–45 (Mo.App.2006) (finding no abuse of discretion in failure to *sua sponte* consolidate competing adoption petitions); *In Interest of T.B.*, 963 S.W.2d 252, 256 (Mo.App.1997) (this Court will not convict the trial court of error on an issue that was not raised below). The Spanglers' first point is denied.

### Substantial Evidence Supporting Judgment Not Required

In their second point relied on, the Spanglers contend that the trial court erred in denying their petition for transfer of custody and adoption because the judgment was not supported by substantial evidence in that the only evidence at trial demonstrated that the Spanglers would be suitable parents to the children. Again, we disagree.

■ In matters affecting the custody of children, it is the petitioners—in this case, the Spanglers—who "have the burden of proof to establish facts justifying [the] transfer of custody." *In re K.K.J.*, 984 S.W.2d 548, 553 (Mo.App.1999).

"When the burden of proof is placed on a party for a claim that is *denied*, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it."

*In re M.B.R.*, 404 S.W.3d 389, 393 (Mo.App.S.D.2013) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010)). Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.

■ The trial court's primary concern in a case involving the custody or adoption of children is the best interest of those children. *In the Matter of Williams*, 672 S.W.2d 394, 395 (Mo.App.1984). It was the Spanglers' burden to demonstrate that transferring custody of the children was in the children's best interest. *In re K.K.J.*, 984 S.W.2d at 553. In their attempt to meet that burden, almost all of their evidence focused on their suitability as parents, their financial stability, and their desire to adopt the children.[3] Their

---

1. All rule references are to Missouri Court Rules (2013).

2. We respectfully decline the Spanglers' invitation to revisit the holdings in *H.M.C.* and its progeny.

3. That desire and the Spanglers' sincere willingness to step in the breach for their family members is commendable. The law's singular focus on the best interest of the children

other evidence referenced only their willingness to allow the children continued communication with their foster parents and their belief that transfer was in the best interest of the children because of the Spanglers' large extended family. The record contains very little evidence about the children and no evidence about the children's physical and emotional needs, their historical or current living situations, their adaptation to their current living situation, or the possible impact upon the children of a change in their living situation if the trial court changed custody to the Spanglers.

> The fact that the petitioners in an adoption proceeding are financially stable, morally and physically fit, and able to furnish a home for the children "is not the end of the matter." *In Matter of B.J.K.*, 573 S.W.2d 382, 384 (Mo.App. 1978). The suitability of the petitioners is merely a preliminary step in reaching the ultimate decision as to what is best for the child.

*Matter of Williams*, 672 S.W.2d 394, 395–96 (Mo.App.1984)

Ultimately, whether based upon credibility determinations or the lack of evidence addressing all of the factors involved, the trial court determined the Spanglers' evidence did not satisfy their burden of proving that transfer of custody was in the best interest of the children. Whether the Spanglers' evidence was uncontradicted or uncontroverted or the opposing party failed to offer any contrary evidence is of no consequence to that determination. *See In re M.B.R.*, 404 S.W.3d at . The Spanglers' second point is denied.3–94

### Decision

The trial court's judgment is affirmed.[4]

does not diminish that commendation in any respect.

NANCY STEFFEN RAHMEYER, and WILLIAM W. FRANCIS, JR., JJ., concur.

4. All motions taken with the case are denied.