S.S.S., L.W.V. & M.T.S-V., Respondents,

v.

C.V.S., Appellant.

No. SC 96307

Supreme Court of Missouri,
en banc.

Opinion issued October 5, 2017

The father was represented by Aaron M. Staebell of Lohmar & Staebell LLC in St. Peters, (636) 441-5400.

The mother and stepfather were represented by Jonathan K. Glassman of the Stange Law Firm PC in St. Louis, (314) 963-4700.

W. Brent Powell, Judge

M.T.S-V. ("Mother") and L.W.V. ("Stepfather") filed a petition for the adoption of S.S.S. ("Child") and termination of the parental rights of C.V.S. ("Father"). The circuit court concluded Father's consent to the adoption was not required pursuant to § 453.040(7), RSMo 2000 [1], because Father willfully abandoned Child and willfully, substantially, and continuously neglected to provide Child with necessary care and protection. The circuit court terminated Father's parental rights and granted the adoption. Father appeals from the circuit court's judgment, arguing its conclusions

1. References to statutes are to RSMo 2000 unless otherwise noted.

regarding abandonment and neglect are against the weight of the evidence. The circuit court's judgment is affirmed.

## I. Factual and Procedural History

In 2007, Mother and Father began a romantic relationship. In 2009, Mother gave birth to a daughter, Child, in the state of California. Father's name appears on the birth certificate. Mother and Child lived with Father in California for approximately eight months following Child's birth. Mother and Father never married.

In 2010, Mother and Father's relationship ended, and Mother and Child moved to St. Louis, Missouri. Father made trips from California to St. Louis to visit Child. Mother also returned to California with Child on at least three occasions to allow Paternal Grandmother to see Child. During these visits, Father would occasionally be present. In 2013, Mother married Stepfather. Following the marriage, Father increased the frequency of his visits to St. Louis and his telephone calls to Child. Father called Child at least three times a week. Mother always supervised Father's visits with Child in St. Louis.

On December 23, 2014, Mother and Stepfather filed a petition for adoption of Child and termination of Father's parental rights. The petition alleged Father willfully abandoned and neglected Child in the six months immediately prior to the filing of the petition. Father contested the termination and adoption.

In 2015, the case proceeded to trial. Mother testified Father does not have a close, personal relationship with Child. She explained Child does not talk about Father between calls and visits, Child struggles to interact with Father during visits, and there were occasions when Father was late or failed to show up for scheduled visits with Child. Mother also testified Father does not make Child's interests a priority during visits, does not interact appropriately with Child, encourages Child to break rules, shows no concerns for social norms, and talks at "cross purposes" with Child. Mother further testified she does not trust Father to keep Child safe as he has shown a lack of concern for Child's health and safety, e.g., by placing Child in a vehicle without the appropriate seat belt or child seat.

In addition, the appointed guardian ad litem reported Child does not consider herself to be close to Father, does not request visits with Father, feels Father ignores her much of the time during visits, and Father was unable to tell the guardian ad litem much about Child. The guardian ad litem also reported Father was 20 minutes late to an arranged one-hour visitation with Child, there was no eye contact between Child and Father during the visit, and Child never looked at Father's face during the visit.

Mother also testified Father provided no financial support for Child. Mother explained, in the six months prior to filing the petition, she received monthly electronic transfers in the amount of $400 from Paternal Grandmother. She further explained it was Paternal Grandmother's idea to send the money, it was always Paternal Grandmother who talked to her about sending the money, and Paternal Grandmother provided financial support to maintain a relationship with Child. Mother also testified Father occasionally provided birthday gifts for Child and one Christmas gift.

Father testified although the $400 was electronically transferred by Paternal Grandmother, the money came from his trust fund. Father testified he has approximately $33,000 in a trust fund he received as an inheritance and he would take out $400 each month and give it to Paternal

Grandmother to send to Mother. Father explained Paternal Grandmother transferred the money because he was unfamiliar with the online banking system. Father further testified he and Child have fun together and she tells him she loves him in person and over the telephone. He admitted he was late to a scheduled visit with Child but claimed he had not missed a planned visit in the six months prior to Mother and Stepfather filing the petition. Father also testified he would like to have a better relationship with Child, but Mother's supervision and control were interfering.

In February, 2016, the circuit court entered its judgment terminating Father's parental rights and ordering Child to be considered Mother and Stepfather's child "for all legal intents and purposes." The circuit court concluded Father willfully abandoned Child for purposes of § 453.040(7) because, despite having occasional contact with Child, he does not have meaningful interactions with her. The circuit court further concluded Father willfully, substantially, and continuously neglected to provide Child with necessary care and protection for purposes of § 453.040(7) because the evidence established that Paternal Grandmother, not Father, was the source of the $400 monthly payments. In reaching its conclusions, the circuit court found Mother's testimony credible but concluded Father was not a credible witness. Father appealed, and after an opinion by the court of appeals, this Court transferred the case pursuant to article V, § 10 of the Missouri Constitution.

## II. Standard of Review

 This Court reviews whether there was clear, cogent, and convincing evidence to support a statutory ground for terminating parental rights or to support a finding that a parent's consent is not necessary for adoption pursuant to § 453.040 under the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976):

> [T]he trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

*See also In the Interest of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017); *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011).

 On appeal, Father contends the circuit court's conclusions regarding abandonment and neglect for purposes of § 453.040(7)[2] are against the weight of the evidence. "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014). "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Id.* (internal quota-

---

2. Section 453.040(7) provides that consent to a child's adoption is not required of:
 A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.]

tions omitted). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 206. "When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." *Id.* "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence." *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). "This Court rarely has reversed a trial judgment as against the weight of the evidence. . . ." *Pearson v. Koster*, 367 S.W.3d 36, 52 (Mo. banc 2012).[3]

### III. Abandonment

Father first argues the circuit court's conclusion he abandoned Child is against the weight of the evidence. Abandonment means "a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of parent or perform the duties of a parent." *C.M.B.R.*, 332 S.W.3d at 816 (internal quotations omitted). "Abandonment is largely a matter of intent." *Id.* "Parents are not allowed to maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment." *In re J.M.J.*, 404 S.W.3d 423, 433 (Mo. App. 2013) (internal quotations omitted). Here, the circuit court concluded Father abandoned Child because his relationship with Child was merely superficial or tenuous.

Father, as well as the dissent, rely on the fact that Father has had frequent contacts and visits with Child. This focus on the frequency of contacts and visits with Child, however, does not account for the **quality** of contacts and visits. The question of abandonment "requires an examination of the parent's intent, an inferred fact, determined by considering **all the evidence of the parent's conduct.**" *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984) (emphasis added). A full consideration of the parent's conduct means intent may be evidenced by not only the frequency of contacts and visits a parent has with a child but also the quality of the contacts and visits. Otherwise, frequent token contact without any substance—in other words, "superficial" contact—would suffice to stave off a determination of abandonment.

3. As this Court stated in *Ivie*: "Prior statements from this and other Courts to the effect that greater deference is paid to the trial court in certain types of cases (e.g., family law) than in others are incorrect and misleading." 439 S.W.3d at 199 n.9. To the extent such cases hold greater deference must be given to the trial court's determinations, they should no longer be followed. *See C.M.B.R.*, 332 S.W.3d at 815 ("Greater deference is granted to a trial court's determinations in custody and adoption proceedings than in other cases."); *see also, e.g., In re Adoption of E.N.C.*, 458 S.W.3d 387, 394 (Mo. App. 2014); *T.P.J. v. T.L.*, 432 S.W.2d 192, 200 (Mo. App. 2014); *D.J.G v. A.B.*, 426 S.W.3d 700, 710 (Mo. App. 2014); *In re Adoption I.R.C.*, 419 S.W.3d 857, 860 (Mo. App. 2013); *J.M.J. v. D.J.*, 404 S.W.3d 423, 429 (Mo. App. 2013); *In re H.N.S.*, 342 S.W.3d 344, 347 (Mo. App. 2011); *Courtney v. Roggy*, 302 S.W.3d 141, 150 (Mo. App. 2009); *S.L.N. v. D.L.N.*, 167 S.W.3d 736, 741 (Mo. App. 2005).

The circuit court's judgment included findings based on the evidence that: (1) "Despite having ample opportunities for visitation and communication with [Child], the evidence adduced at trial and the GAL Report demonstrate a long term lack of interest in [Child] by [Father];" (2) "Despite having occasional contact with [Child], [Father] does not have meaningful interactions with [Child] and often arrives late or completely fails to appear for scheduled visits;" (3) Child "does not appear to have emotional ties to [Father], as observed by the Guardian Ad Litem and corroborated by the testimony of other witnesses who have observed [Father's] interactions with [Child];" (4) Father "has continuously demonstrated a lack of commitment to [Child], by neglecting [Child's] health and safety when she was in his care, showing very little interest in [Child], missing scheduled visits without justifiable excuses, arriving 20 minutes late without explanation and missing a third of his Guardian Ad Litem observed visits with [Child] ... and lacking the emotional maturity to display parental commitment;" (5) Father "does not make [Child] a priority when he spends time with her, in that he does not want to go places that [Child] enjoys (such as parks or playgrounds) because he does not get her full attention, and he prefers to take her to places that are important to him without regard to [Child's] needs and interests;" (6) Father "is more concerned about his perceived importance to [Child] than he is about [Child] herself;" (7) Father "much of the time ... ignores [Child] during visits;" and (8) Father "has failed to pay for the cost of care and maintenance of [Child] despite being financially able to do so."

Considering these findings, there is clear, cogent, and convincing evidence to support the circuit court's conclusion that Father's consent to adoption was not required due to abandonment. The circuit court could have reasonably found, despite frequent contacts and visits, Father's relationship with Child was merely superficial or tenuous. While it may also be reasonable to find Father's relationship with Child was not merely superficial or tenuous, this Court must defer to the circuit court's assessment of the evidence and its findings when the evidence poses two reasonable but different inferences. *See J.A.R.*, 426 S.W.3d at 626. Thus, the circuit court's conclusion that Father willfully abandoned Child based on a finding that his relationship with Child was merely superficial or tenuous cannot be said to be against the weight of the evidence. *See Ivie*, 439 S.W.3d at 206.

## IV. Neglect

Father also argues the circuit court's conclusion that he neglected Child is against the weight of the evidence because he provided financial support to Child. Although this Court may affirm the circuit court's judgment on the ground of abandonment alone,[4] the circuit court's conclusion regarding neglect is also not against the weight of the evidence. Parents have a continuing obligation to provide financial support to a minor child. *In re Adoption of C.M.*, 414 S.W.3d 622, 656 (Mo. App. 2013); *see also S.M.H v. T.H.*, 160 S.W.3d 355, 367 (Mo. banc 2005). Father contends he financially supported Child by making the $400 monthly payments through Paternal Grandmother. Father testified he earns money as a music producer and the money for the $400 support payments came from his trust fund, which contains approximately $33,000. But the circuit court specifically found Father

---

4. A finding of **either** abandonment **or** neglect suffices for purposes of not requiring parental consent to an adoption. *See* § 453.040(7); *see also J.M.J.*, 404 S.W.3d at 432.

failed to offer any credible evidence he paid the money to Paternal Grandmother that was subsequently paid to Mother. Rather, the circuit court concluded Paternal Grandmother was the source of all funds paid to Mother. The bank records support the circuit court's findings in that they show all funds transferred to Mother in the six months prior to the filing of the adoption petition were in Paternal Grandmother's name. Mother testified she spoke exclusively to Paternal Grandmother about the payments and Paternal Grandmother made the payments to maintain a relationship with Child. The record, therefore, supports the circuit court's finding that Father failed to provide financial support to Child despite having the ability to do so and refutes the only argument Father advanced in challenging the circuit court's conclusion of neglect.

Although not argued by Father on appeal, the dissent again relies on the frequency of Father's contacts and visits with Child to reject the circuit court's conclusion that Father neglected Child. While this Court has never expressly held that neglect requires a willful failure to provide financial support **combined** with other evidence of lack of contact with the child, the court of appeals suggested such. See, e.g., J.M.J., 404 S.W.3d at 432 ("'Neglect' is ultimately a question of an intent to forego 'parental duties,' which includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child."). Even assuming, without deciding, that a conclusion of neglect cannot be based solely on a willful failure to provide financial support, there is clear, cogent, and convincing evidence to support the circuit court's finding that Father's relationship with Child was superficial or tenuous, i.e., that he did not "maintain **meaningful** contact" with Child." See id. (emphasis added). Section

453.040(7) specifically refers to neglect as failing to provide a child with "necessary care and protection." A parent may have frequent contact with a child yet still neglect to provide the child with necessary care and protection. Providing "care and protection" requires providing for the health, welfare, maintenance, and protection of a child, but it also suggests having a concern, interest, and attachment to the child. See Webster's Third New International Dictionary Unabridged 338 (2002).

■ The dissent's focus on the frequency of Father's contacts and visits with Child fails to account for the circuit court's findings supporting its conclusion that Father neglected to care for and protect Child. Considering the same findings discussed above—e.g., Child's lack of emotional ties to Father, Father's lack of long-term interest and commitment to Child's interests and needs, Father's neglect of Child's health and safety, and Father's complete lack of financial support—there is clear, cogent, and convincing evidence to support the circuit court's conclusion that Father's consent to adoption was not required due to neglect. The circuit court could have reasonably found, despite frequent contacts and visits, Father has not only failed to provide financial support to Child despite having the ability to do so but also had only superficial rather than meaningful contact with Child. Again, while it may also be reasonable to find Father's contacts were not superficial, this Court must defer to the circuit court's assessment of the evidence and its findings when the evidence poses two reasonable but different inferences. See J.A.R., 426 S.W.3d at 626. Moreover, it is noteworthy the circuit court found Father provided no financial support for Child for the six months preceding the filing of the petition for adoption despite having the ability and resources to do so. Such willful neglect

speaks louder than his words or his superficial or tenuous contacts with Child. The circuit court's conclusion that Father willfully, substantially, and continuously neglected to provide Child with necessary care and protection is not against the weight of the evidence.[5] *See Ivie*, 439 S.W.3d at 206.

## V. Conclusion

The circuit court's judgment is affirmed.

Fischer, C.J., Wilson and Russell, JJ., concur;

Breckenridge, J., dissents in separate opinion filed;

Draper and Stith, JJ., concur in opinion of Breckenridge, J.

Patricia Breckenridge, Judge, dissenting.

I respectfully dissent. The circuit court's judgment finding C.V.S. (Father) willfully abandoned and neglected S.S.S. (Child) is against the weight of the evidence and results in a significant departure from prior case law establishing grounds for involuntary termination of parental rights pursuant to section 453.040(7).[1]

As the principal opinion acknowledges, the "clear, cogent, and convincing standard of proof applies in chapter 453 termination cases and adoptions." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 819 (Mo. banc 2011). This standard "is met when the

evidence instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984) (internal quotation omitted) (alteration in original).

The burden, therefore, was on M.T.S-V. (Mother) and L.W.V. (Stepfather) to prove by clear, cogent, and convincing evidence that Father willfully abandoned Child or willfully, substantially, and continuously neglected to provide Child with necessary care and protection. The clear, cogent, and convincing evidence standard required Mother and Stepfather to present evidence that instantly tilted the scales in the affirmative. They failed to meet their burden.

## Abandonment

The principal opinion reasons the circuit court's finding of abandonment cannot be said to be against the weight of the evidence because Father's relationship with Child was merely superficial and tenuous. For purposes of section 453.040(7), abandonment means "the voluntary and intentional relinquishment of the custody of a child with the intent to never again claim the rights or duties of a parent." *In re J.M.J.*, 404 S.W.3d 423, 432 (Mo. App. 2013) (internal quotation omitted). Abandonment is further "defined as the intentional withholding by the parent of his or

---

5. That the circuit court could have reasonably concluded Father abandoned and neglected Child based on the evidence is true even though "[t]he clear, cogent, and convincing standard of proof applies in chapter 453 termination cases and adoption." *C.M.B.R.*, 332 S.W.3d at 819. "The clear, cogent and convincing standard of proof is met when the evidence 'instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence

is true.'" *W.B.L.*, 681 S.W.2d at 454. "Accordingly, this standard of proof may be met although the court has contrary evidence before it." *Id.* "Likewise, evidence in the record which might have supported a different conclusion does not necessarily demonstrate that the trial court's determination is against the weight of the evidence." *Id.*

1. Unless otherwise noted, all statutory citations are to RSMo 2000.

her care, love, protection and presence, without just cause or excuse." *Id.* (internal quotation omitted).

The circuit court concluded Father abandoned Child because:

> Despite having ample opportunities for visitation and communication with [Child], the evidence adduced at trial and the [guardian ad litem's] Report demonstrate a long term lack of interest in [Child] by [Father]. Despite having occasional contact with [Child], [Father] does not have meaningful interactions with [Child] and often arrives late or completely fails to appear for scheduled visits. As such, [Father]'s relationship with [Child] is superficial and tenuous and is insufficient to establish that he has not willfully abandoned [Child].

First, the circuit court's finding that Father's contact with Child is insufficient to establish he has not willfully abandoned Child improperly shifts the burden to Father. Father does not bear the burden of establishing he **has not** willfully abandoned Child. It is Mother and Stepfather who have the burden to prove by clear, cogent, and convincing evidence that Father **has** willfully abandoned Child.

Second, there is no evidence Father "demonstrate[d] a long term lack of interest" in Child or had only "occasional contact" with Child. Instead, the record reflects Mother and Child lived with Father for the first eight months of Child's life. When Mother moved to St. Louis with Child, Father made trips from the state of California to St. Louis to visit Child. His visits to St. Louis increased in frequency following Mother's marriage to Stepfather. More importantly, the evidence showed, in the six months before the adoption petition was filed, Father maintained continuous contact with Child. Father called Child at least three times a week and visited Child in St. Louis on at least three or four occasions. During these visits, Father would spend three to five hours each day with Child. Father, therefore, remained in constant contact with Child during the statutory period.

Likewise, the circuit court's determination that Father "does not have meaningful **interactions** with [Child]" and that Father's relationship with Child is "superficial and tenuous" is not supported by the record and misapplies the law. (Emphasis added). In determining whether a parent has abandoned a child, case law supports consideration of whether the parent has a "meaningful **relationship**" with the child and whether the parental relationship is "superficial and tenuous." But these considerations focus primarily on the frequency and amount of contact between the parent and the child and never entirely on the quality of the parent-child interactions during those contacts. *See J.M.J.*, 404 S.W.3d at 433 (finding mother's efforts to be token when she made increasingly sporadic visits during which she showed little interest in the child); *In re C.M.B.*, 55 S.W.3d 889, 895 (Mo. App. 2001) (finding father's efforts were token when he made no effort to establish visitation with the child and sent gifts and cards through mother, who was exercising her rights to visitation); *In re B.S.R.*, 965 S.W.2d 444, 450 (Mo. App. 1998) (finding father made token efforts to maintain contact when he visited the child only once despite opportunities for supervised visits); *In re C.W.*, 753 S.W.2d 933, 939-40 (Mo. App. 1988) (finding mother made only token efforts when she called the child only twice during a six-month period). Neither Mother and Stepfather nor the principal opinion have cited cases, and I have found none, that hold abandonment is proven with contacts of the magnitude shown in this case simply because the parent did not show sufficient interest in the child during visits or did not take the child places the child enjoys.

Rather, Mother, whom the circuit court found to be a credible witness, testified Father calls and speaks with Child an average of three times a week. For a time, he was calling every day, and Mother directed him not to call so often. She also testified Father visits Child three to four times per year by traveling from California to Missouri. When Father is in Missouri, he sees Child multiple times per trip. These contacts and visits have occurred despite the fact Father has missed 10 scheduled visits and has been late 20 times during the five years since Mother moved to Missouri. In light of this evidence, I would conclude the circuit court's finding of abandonment is against the weight of the evidence because the record does not establish Father voluntarily and intentionally relinquished custody of Child with the intent to never again claim his parental rights or duties.

## Neglect

The principal opinion further concludes the circuit court's finding of neglect is not against the weight of the evidence. This Court has construed neglect under section 453.040(7) to mean "intentional, deliberate, and without just cause or excuse, evincing a settled purpose to forego parental duties over the period of time which the statute prescribed." *In re Adoption of R.A.B.*, 562 S.W.2d 356, 358 (Mo. banc 1978) (internal quotation omitted). Neglect "focuses on physical deprivation or harm, and has been characterized as a failure to perform the duty with which the parent is charged by the law and by conscience." *J.M.J.*, 404 S.W.3d at 432 (internal quotation omitted).

I agree the record supports the circuit court's finding that Father failed to provide financial support to Child despite having the ability to do so. But failure to provide financial support alone is not sufficient to prove willful, substantial, and con-

tinuous neglect. *C.B.L. v. K.E.L.*, 937 S.W.2d 734, 738 (Mo. App. 1996); *see also B.S.R.*, 965 S.W.2d at 450; *S.C.H. v. C.W.H.*, 587 S.W.2d 945, 947 (Mo. App. 1979). Rather, Missouri courts have consistently held there must be evidence of a lack of financial support **combined with other evidence of lack of contact** to sustain a finding of willful, substantial and continuous neglect. *In re R.M.*, 234 S.W.3d 619, 622 (Mo. App. 2007); *In re Adoption of B.D.W.*, 185 S.W.3d 727, 738 (Mo. App. 2006); *In re S.J.S.*, 134 S.W.3d 673, 678 (Mo. App. 2004); *C.B.L.*, 937 S.W.2d at 738; *In re Marriage of A.S.A.*, 931 S.W.2d 218, 222 (Mo. App. 1996); *S.C.H.*, 587 S.W.2d at 948.

The principal opinion recognizes such case law exists but concludes this Court has never expressly held failure to provide financial support alone is insufficient to establish neglect. This Court, however, has reversed a finding of neglect when the father failed to provide any financial support for his three children during the statutory period. *See R.A.B.*, 562 S.W.2d at 361.

In *R.A.B.*, the father and mother divorced, and the three children lived with the mother in Pennsylvania. *Id.* at 358. The father visited the children whenever he was in town but provided no financial support for the children. *Id.* When the father subsequently remarried, the children spent two weeks with him at his new home in New York. *Id.* When the mother moved to Missouri, the father paid $2,000 to cover her unpaid bills. *Id.* at 359. The father also made two trips to see the children in Missouri and brought gifts and clothing on at least one occasion. *Id.* at 360. In reversing the circuit court's finding of willful neglect, this Court acknowledged the father "paid little or no money to the natural mother" during the statutory period and stated it did "not condone his failure to pay monies for support within the

limits of his abilities." *Id.* at 361. Nevertheless, this Court found: "The manifestation of [the father]'s interest in his children ... and his efforts to maintain his relationship with them during the statutory year prior to the filing of the adoption petition do not evince a settled purpose to forego his parental rights and duties." *Id.*

Similar to the father in *R.A.B.*, Father showed an interest in and made an effort to maintain a relationship with Child by calling her three times a week and regularly visiting her in St. Louis. While I cannot condone Father's failure to provide financial support to Child, the record establishes there was substantial contact between Father and Child in the six months prior to the adoption petition being filed. Father's efforts to maintain continuous contact with Child does not evince a settled purpose to forego his parental rights and duties.

The principal opinion concludes, even if evidence of lack of contact with the child is necessary, there is clear, cogent, and convincing evidence Father did not maintain "meaningful contact" with Child as shown by Child's lack of emotional ties to Father, Father's lack of long-term interest in and commitment to Child's interests and needs, and Father's neglect of Child's health and safety. In support of this conclusion, the principal opinion relies on *J.M.J.*, 404 S.W.3d at 432. But *J.M.J.* is vastly different from the facts and circumstances of this case.

In *J.M.J.*, the court of appeals concluded there was clear, cogent, and convincing evidence to support the circuit court's determination that the mother willfully abandoned and neglected the child not only because she failed to provide financial support and showed little interest in the child

but also because the mother failed to provide a safe environment for the child in that the mother allowed individuals—including registered sex offenders, drug addicts, and a man with criminal history and mental health issues—into her home. *Id.* at 433. One of these individuals sexually abused the child's half-sibling. *Id.* The record further established the mother's resources were spent to help and care for these individuals living in her home instead of the child. *Id.* at 432.

In this case, the circuit court's finding that Father neglected Child's health and safety resulted from Mother's testimony about an incident occurring more than a year and half before the filing of the adoption petition in which Father did not have Child properly restrained by a seat belt. Such conduct does not amount to the health and safety risks posed to the child in *J.M.J.* and certainly does not amount to grounds for terminating Father's parental rights.[2]

Likewise, the circuit court's findings regarding Child's lack of emotional ties to Father and Father's lack of interest in Child were based on conclusory testimony from Mother and Stepfather about Child's relationship with Father as well as a report by the guardian ad litem. The guardian ad litem, however, based her conclusions on one 40-minute interaction she observed between Father and Child the day before trial in which she noted no eye contact between Father and Child. One visit during which both Child and Father know they are being observed should not outweigh Father's continuous efforts to make contact with and visit Child.

I acknowledge the "lack of contact" principle has been stated in terms of fail-

**2.** Such concerns could easily be resolved through supervised visitation as evidenced by Mother's own testimony that she insisted on supervised visits—which Father never contested—following the incident and thereby alleviated any health or safety concerns during Father's visits with Child.

ing to maintain "meaningful contact." *See, e.g., In re T.S.D.*, 419 S.W.3d 887, 895 (Mo. App. 2014); *J.M.J.*, 404 S.W.3d at 432; *B.S.R.*, 965 S.W.2d at 449. But none of these cases has found a lack of contact sufficient for purposes of neglect *primarily* because the parent arrived late or missed a visit or because the parent does not show sufficient interest in the child during visits. Rather, such cases entailed minimal or sporadic contact or no actual visitation with the child combined with other evidence of disinterest in the child. Accordingly, I would find the circuit court's finding of willful neglect to be an unprecedented departure from Missouri case law regarding involuntary termination of parental rights pursuant to section 453.040(7).

### Conclusion

From the record, it is evident Father is not a model parent. But natural parents have a fundamental liberty interest "in raising their children [that] does not evaporate simply because they have not been model parents." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). The fact Child has established a relationship with Stepfather does not negate Father's constitutional right to parent his Child.[3] To find Father's consent is not necessary for Stepfather to adopt Child, there must be clear, cogent, and convincing evidence in the record that Father willfully abandoned Child—that he voluntarily and intentionally relinquished custody of Child with the intent to never again claim the rights or duties of a parent—or there must be clear, cogent, and

convincing evidence that Father willfully, substantially, and continuously neglected Child—that he intentionally, deliberately, and without just cause evinced a settled purpose to forego parental duties. Because there is not sufficient evidence to support a finding that Father abandoned or neglected Child for purposes of section 453.040(7), I would reverse the circuit court's judgment as against the weight of the evidence.

---

**3.** The circuit court made many extraneous findings of fact and conclusions of law that were irrelevant to the determination of abandonment or neglect pursuant to section 453.040(7), including nearly all of its findings regarding the home study and *especially* its findings that, if the adoption is granted, Mother and Stepfather intend to allow Father to visit and communicate with Child and will not prevent Father from having a similar level of involvement in Child's life.