

# Missouri Court of Appeals
## Southern District
### Division One

| | | |
|---|---|---|
| In the Interest of S.S. | ) | |
| LAWRENCE COUNTY JUVENILE OFFICE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD36180 |
| | ) | |
| J.R.W.S., | ) | FILED: March 18, 2020 |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Scott S. Sifferman, Judge

**<u>AFFIRMED</u>**

J.R.W.S. ("Father") appeals the trial court's judgment terminating his parental rights to his minor daughter, S.S., upon the grounds under sections 211.447.5(2) ("abuse or neglect") and 211.447.5(3) ("failure to rectify").[1] Father raises three points on appeal, claiming that the trial court's factual findings supporting each ground are against the weight of the evidence. Determining that Father's third point, challenging a factual finding supporting the failure to rectify ground, has no merit and that its denial is dispositive of this appeal, we affirm.

---

[1] All statutory references are to RSMo Cum. Supp. (2018).

## Applicable Legal Principles

"A reviewing court *will* affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law." ***In re Q.A.H.***, 426 S.W.3d 7, 12 (Mo. banc 2014) (emphasis added).

> Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court's assessment of the evidence. This Court rarely has reversed a trial judgment as against the weight of the evidence.

***S.S.S. v. C.V.S.***, 529 S.W.3d 811, 815–16 (Mo. banc 2017) (internal quotation marks and citations omitted).

The framework for a cogent against-the-weight-of-the-evidence challenge on appeal involves four distinct analytical steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) Demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*In the Interest of C.Z.N.*, 520 S.W.3d 828, 834 (Mo.App. 2017) (citing **Houston v. Crider**, 317 S.W.3d 178, 186–87 (Mo.App. 2010)). The demonstration described in the framework's fourth step is synonymous with showing that the trial "court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment[,]" as articulated by our Supreme Court in **S.S.S.**, *supra*.

### Factual and Procedural Background

Father is the natural father of S.S., a female child, born in January, 2004. S.S., along with her older and then minor sisters, J.S. and K.S., were brought into the custody of the Children's Division of the Missouri Department of Social Services ("Children's Division") on March 16, 2015, after K.S. alleged that Father had engaged in incest by having sexual intercourse with her.

At that time, criminal charges had been filed and were pending against Father arising out of this allegation. The trial court in that criminal case placed the condition upon Father that he have no contact with any of his three daughters (the "no contact order").

Also at that time, a juvenile proceeding was initiated that resulted in an adjudication in the Juvenile Division of the Circuit Court (the "Juvenile Court") on May 13, 2015, by clear and convincing evidence, that Father had engaged in incest with K.S., as alleged. Following this adjudication and as part of its efforts to bring about reunification, the Children's Division proposed a written service agreement to Father. This proposed agreement would have required Father to "complete a psychosexual evaluation and parenting assessment[,]" "follow any recommendations received from the evaluation[,]" and "resolve his legal issues." Father did not sign this proposed service agreement because, at the advice of his attorney, he didn't want to participate in a psychosexual evaluation or individual therapy until his criminal trial had been resolved. Father never asked for an alternative service agreement and never asked for any services that were not included in the proposed service agreement.

3

On October 8, 2018, over 42 months after S.S. came into its custody, Children's Division filed a petition to terminate Father's parental rights. At the trial on that petition, held on April 9, 2019, Children's Division called Robyn Kleibocker as its only witness. Kleibocker had been S.S.'s case manager the entire time S.S. had been in Children's Division custody. According to Kleibocker, as of the date of trial in this case, Father had not agreed to or signed a written services agreement or participated in services because of his pending criminal case. Due to the no-contact order, Father had not had any contact with S.S. since she came into Children's Division custody and Kleibocker had never been notified that the no-contact order for S.S. had been lifted. Kleibocker also testified that due in part to the continuing no-contact order, she did not believe that any additional services would bring about a lasting parental adjustment to allow S.S. to return to Father's home. She related that while Father's criminal case was set for trial the following month, it was 14th in a line of cases set for trial that day so she could not say that was a "definitive date" for whether the trial would actually take place on that date. Because this setting was not "high on the list" Kleibocker concluded that "there's no real way to set an ascertainable timeline" as to when reunification efforts with Father could be started.

S.S.'s mother ("Mother") testified on her own behalf at the trial. At the conclusion of her direct examination she asked "the Court to continue with this case and provide further services to [her] in the effort to reunite [her] with [her] daughter [S.S.]." During cross examination, she confirmed that except for the two-week period immediately following S.S. coming into Children's Division custody, Mother had lived continuously thereafter in the same home with Father.

When offered the opportunity by the trial court to offer evidence, Father's attorney stated to the trial court:

Judge, for obvious reasons, [Father] does not wish to testify today. He just wants to stand on the pleadings that we've filed in response to the petition. Due to the criminal case, he just doesn't feel that it would be prudent to testify, so he – we do not have any evidence….

The court terminated Father's parental rights to S.S. finding that under section 211.447.5(2)(c) she was abused or neglected and that under section 211.447.5(3) the conditions that led to the assumption of jurisdiction had not been rectified. As to the latter ground, the trial court found that S.S. had "been under the jurisdiction of the juvenile court for a period of one year" and "that the conditions which led to the assumption of jurisdiction still persist, and that there [was] little likelihood that those conditions [would] be remedied at an early date so that the child [could] be returned to [Father] in the near future."

### Discussion

Father raises three points on appeal. His first and second points challenge the trial court's factual findings supporting the section 211.447.5(2) ground for termination (abuse or neglect) as being against the weight of the evidence. His third point challenges the trial court's factual findings, recited in the preceding paragraph, supporting the section 211.447.5(3) ground for termination (failure to rectify) as also being against the weight of the evidence.[2] For ease of analysis, we commence our discussion with the last point.

In his third point, Father claims that the trial

> Court's finding that, under Section 211.447(5)(3) RSMo., the child has been under the jurisdiction of the juvenile court for a period of one year, and the conditions which led to the assumption of jurisdiction still persist, and there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future is against the weight of the evidence.

---

[2] Father does not challenge the trial court's best interest of the child determination.

5

While Father purports to identify and characterize his challenged finding as a singular "finding" by the trial court, his point actually identifies three separate factual propositions for which the existence of each is necessary to support the trial court's judgment under the failure to rectify ground for termination: 1) the child has been under the jurisdiction of the juvenile court for a period of one year, 2) the conditions which led to the assumption of jurisdiction still persist, and 3) there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future. *See* section 211.447.5(3).

Father asserts these findings are against the weight of the evidence "because the evidence showed" the following four purported contrary facts:

- Father's constitutional right not to testify due to his pending criminal case and his constitutional right to a relationship with his child weighed in favor of maintaining Father's parental rights pending his opportunity to participate in services and testify at trial in that Father was contesting the criminal charges against him but did not testify at the trial of the case because of the criminal charges pending against him;

- Father should not have his parental rights terminated because of his exercise of his constitutional right not to testify while the criminal charges were pending;

- Mother requested that the trial of the termination of parental rights case be postponed; and

- there was no urgency to terminate Father's rights before the trial of his criminal case.

None of Father's four purported contrary facts nor any of his arguments under this point, however, impinge upon or purport to undermine the reasonableness of either the trial court's finding that S.S. has been under the jurisdiction of the juvenile court for a period of one year or its finding that the conditions which led to the assumption of jurisdiction still persist.[3] In that

---

[3] Father concedes in his argument under this point that "the child had been under the jurisdiction of the juvenile court for more than a year and the circumstances had not changed significantly between [Father] and the minor child[.]"

regard, these findings, although identified as such in Father's point, are not challenged by Father. Rather, Father's purported contrary facts and supporting arguments are related to and directed toward only the reasonableness of the trial court's last finding identified by Father—there is little likelihood that the conditions which led to the assumption of jurisdiction and still persist will be remedied at an early date so that S.S. can be returned to Father in the near future (the "challenged finding"). We, therefore, first address the favorable evidence in the record supporting the challenged finding and then address each of Father's purported contrary facts.

The Juvenile Court in the underlying case assumed jurisdiction over S.S. by its adjudication and order on May 13, 2015, finding, by clear and convincing evidence, that Father had engaged in incest with S.S.'s sister. In accordance with that order, S.S., who had been in temporary foster care since March 16, 2015, remained in foster care and in the custody of Children's Division. At that time, criminal charges were pending against Father related to his sexual abuse of S.S.'s sister and the court in which those criminal charges were pending had imposed the no contact order on Father. Children's Division offered a written service agreement to Father to provide services to him in an attempt to lead to reunification with S.S. Father refused to sign that written service agreement and refused to participate in any services proposed to be provided to him by Children's Division while the criminal charges were pending.

Almost four years later, on April 9, 2019, the day of the trial on the petition to terminate Father's parental rights to S.S. in this case, none of the conditions that lead to the assumption of jurisdiction had changed during the interim. As of that date, Father had not engaged in any Children's Division proffered services to attempt to change those conditions during that period and had not taken any actions or made any attempts otherwise to address or change those conditions. Father had refused to participate in services and was continuing to refuse to

7

participate in services related to reunification with S.S. so long as the criminal case was pending. Given Father's refusal to participate in services and so long as the no contact order remained in place, the Children's Division could not provide any additional services that would bring about a lasting parental adjustment to allow S.S. to return to Father's home.

The only evidence in the record related to when these conditions might potentially change in the future is that Father's pending criminal charges were set as the 14th case for trial on a day sometime during the month following the trial in this case. Because of the number of cases set for trial in front of it, however, this setting was not a "definitive date" for whether the trial would actually take place on that date. Because this setting was not "high on the list" it did not provide any "real way to set an ascertainable timeline" as to when reunification efforts with Father could be started.

Based upon this evidence and inferences drawn therefrom, the trial court found that there was little likelihood that the conditions which lead to the assumption of jurisdiction over S. S. and still persisted would be remedied at an early date so that the she could be returned to Father in the near future. Presupposing that this factual finding is supported by substantial evidence, *S.S.S.*, 529 S.W.3d at 815–16, Father's against-the-weight-of-the evidence challenge asserts that when his four purported contrary facts are taken into consideration, the trial court could not have reasonably made this challenged finding. We disagree.

Father's first purported contrary fact is that his assertion of his constitutional right not to testify due to his pending criminal case prevented him from participating in services and testifying in this case.[4] While the record supports that Father did not participate in services and

---

[4] While Father's purported reason for not participating in services and testifying at trial in this case was his assertion of his Fifth Amendment constitutional right against self-incrimination, he did not raise in the trial court nor in this appeal any claim that terminating his parental rights under the failure to rectify ground in section 211.447.5(3) was a misapplication of law by the trial court in violation of that constitutional right. *See State ex rel. Houska v.*

did not testify in this case due to his pending criminal case, Father fails to point to any evidence in the record that his participation in services or testimony at trial in this case would have *required* him to incriminate himself in any manner. Indeed, the evidence in the record is that Father consistently maintained his innocence of engaging in incest with S.S.'s sister. Father points us to nothing in the record that supports that maintaining his innocence would have prevented him from either participating in services or testifying in this case.

In addition, Father's argument implicitly assumes without explanation that participating in services and testifying at trial were the *only* actions he could have taken to address the conditions that lead to the assumption of jurisdiction over S.S. They were not. For example, there is no evidence in the record that Father took any action to exercise his constitutional right to a speedy trial in the pending criminal case. *See **State ex rel. Garcia v. Goldman***, 316 S.W.3d 907, 911 (Mo. banc 2010) (while violation of speedy trial rights involves a balancing process, a delay in holding a trial of greater than eight months is presumptively prejudicial to defendant). The four-year delay at the time of trial in this case in having a trial in the pending criminal case gives rise to a reasonable inference that Father took no such action. Likewise, nothing in the record supports that Father took any action during that four-year period to have the no contact order modified by the criminal court in such a way as to facilitate his reunification efforts with S.S. at an earlier date.

Moreover, citing ***Johnson v. Missouri Bd. of Nursing Adm'rs***, 130 S.W.3d 619, 631 (Mo.App. 2004), Father acknowledges that a fact-finder in a civil case, the trial court here, had

---

***Dickhaner***, 323 S.W.3d 29, 33 (Mo. banc 2010) (constitutional challenges to the validity of any alleged right or defense asserted by a party to an action must be raised at the earliest opportunity consistent with good pleading and orderly procedure). Rather, Father's only claim on appeal is that because of his assertion of that right due to his pending criminal case, the trial court could not have reasonably found the existence of the challenged finding—there was little likelihood that the conditions which lead to the assumption of jurisdiction over S.S. and still persisted would be remedied at an early date so that the she could be returned to Father in the near future—regardless of the probative weight the trial court assigned to the favorable evidence and inferences supporting it.

the discretion to "draw a negative inference against [Father] due to him not testifying[.]" Father then proceeds to argue that this inference as "evidence supporting the court's finding was overcome by [Father's] invocation of his right not to testify[.]" This strawman and somewhat circular argument fails, however, because Father does not point to anything in the record that supports the trial court drew, much less relied upon, such an inference in making the challenged finding.

Father's second purported contrary fact—"Father should not have his parental rights terminated because of his exercise of his constitutional right not to testify while the criminal charges were pending"—is not a *fact* and is not supported by any *evidence* at trial. It is merely a statement as to Father's desired policy as to what the law should be. In that context, it has no analytical place or value in an against-the-weight-of-the-*evidence* challenge or argument.

As to his third purported contrary fact—Mother's request for a continuance, Father has failed to explain or demonstrate how *her* request for a continuance to allow for the provision of additional services to *her* in an effort to reunite *her* with S.S. has any analytical place or value in *his* against-the-weight-of-the-evidence argument as to the challenged finding against *him*. This request was made by Mother for her benefit and directed toward her reunification with S.S., not Father's, and, in any event, was not granted by the trial court. The mere existence of such a request is not contrary to the challenged finding against Father and, even assuming it was, has no logical connection to or impact upon the weight assigned by the trial court to the favorable evidence supporting the challenged finding and the trial court's reasonableness in making it.

Finally, Father's fourth purported contrary fact—"there was no urgency to terminate Father's rights before the trial of his criminal case"—is described in Father's argument as "[t]he evidence showed that a criminal trial was pending in the near future[.]" Father, however, does

not mention, much less address, the already existing four-year delay in having a trial in his criminal case, the uncontroverted evidence as to the tenuous nature of being the 14th case set for trial on that date in the following month or, if he is ultimately acquitted in that case, the time it would then take in order to bring about a potential reunification with S.S.[5]

Given the above described analytical deficiencies, Father has failed to demonstrate that the trial court could not have reasonably found, from the record at trial, the existence of the challenged finding. *See S.S.S.*, 529 S.W.3d at 816. The challenged finding, therefore, is not against the weight of the evidence and Father's third point is denied.

Because proof of only one statutory ground under section 211.447.5 is sufficient to sustain a judgment terminating parental rights, *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004), our denial of Father's third point is dispositive of this appeal. We need not consider, therefore, Father's first and second points challenging the trial court's findings related to the abuse or neglect ground for termination.

## Decision

The trial court's judgment is affirmed.

GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[5] While an acquittal in the criminal case would dissolve the existing no contact order in that case, it would signify only that the State failed to prove beyond a reasonable doubt that Father sexually abused S.S.'s sister. Regardless, any potential reunification of S.S. with Father following an acquittal could only occur within the context of the prior Juvenile Court clear and convincing evidence adjudication that Father engaged in incest by having sexual intercourse with S.S.'s sister and by addressing all of the ramifications and issues related to S.S. arising from that determination.